Hemphill, Ch. J.
Several errors were assigned, presenting, however, but two points deserving consideration, viz, whether tiie vendor had exhibited proof of legal title in himself; and, if not, whether lie was, nevertheless, entitled to recover. As to the first, it was urged that the deed of tiie administrator, by way of recital, should have contained a narrative of tiie principal proceedings in the suit on which the decree for conveyance was founded ; and also (lie decree; and that, for the want of this, the deed was void, and conveyed no title.
*122 By reference to the section of the statute under which the proceeding was had, (art. 1162, Dig’.,) it will be seen that no directions are given as to the-matters which shall be recited in the deed of the administrator. lie is not required, expressly, to set forth at large the proceeding’s or decree; and tiieir recital does not, therefore, constitute an essential part of the conveyance ; nor is it evidence of their existence, except between tlie parties and their privies. (2 N. & McC. R., 348; 11 Wend. R., 425; 10 Johns. R., 281; 7 Mon. R., 386; Cowen & Hill’s Notes to Phillips, vol. 4, pp. 833,830.) Such recitals are convenient to all parties interested in the conveyance, as facilitating’ inquiries into the title; but, nevertheless, they are inserted by authority of statute; they do not constitute such evidence as will, against a third party, support the right claimed under the deed. Tlie judgment or decree authorizing the conveyance must be produced; and however extended the recitals of the administrator may have been, yet they would have constituted no protection to tlie vendee, without proof of the decree which gave the power to convoy. (Howard & Wife v. North, 5 Tex. R.)
There was no error, then, in refusing’ to instruct the jury that tlie. proceedings or decree must be set forth at large in the deed. It seems, upon the authorities, that tlie order or decree .should bo identified in the deed, and that the capacity in which the administrator acts should be made to appear. (10 Conn. R., 77; 4 Greenl. R., 248; 3 Mon. R., 211; 4 Phill. Ev., 836.) But a 'mistake in the recital of tlie order would not vitiate,, if a sufficient power to convey be found. (10 Johns. R., 381.)
But the difficulty presented by the recitals in this deed is not that there is no reference at ail to the power under which the administrator acted, or that it is not sufficiently set forth, but that the recital identifies an order of the Probate Court which, in itself, and as it is recited, is a nullity, and confers no autliorit3r, in law, upon the administrator to convey. The order, as described, requires the administrator to execute titles to all lands for which the estate of tlie deceased stood bound. This order is comprehensive; not made on consideration of tlie matters presented in a cause litigated between certain parties, but extends to all the obligations of the deceased to convey; confers on the administrator a discretionary power to determine on the validity of such obligations, and to convey accordingly. And whether sncli be the extent of the power contained in the decree or not, at all events it is such as is not authorized by the statute. The mode of proceeding is, in tlie section, specifically detailed : the vendee must file his complaint in writing; the chief justice, in the exercise of his judgment, must find (and this, of course, on satisfactory and competent evidence) that the sale was legally made; and tlie order must be for title, in conformity with the tenor of the bond. Tlie authority conferred on tlie Probate Court by the section is special and limited, and must be strictly pursued, otherwise the acts and proceedings had thereon are nugatory, and confer no right.
íf títere be a decree which, in fact, authorizes tlie conveyance, none such ivas produced. Tlie defect might have been aided had the power been conferred by a proper decree; aud its production was incumbent upon the vendor, liad it in fact existed; but the deed, as it now stands, and as it was offered in support of tlie action, destroys itself. It furnishes intrinsic evidence of nullity, and lias no capacity to pass tlie title. Tlie legal title still remains in tlie succession of the deceased. It has not been transferred to the vendor, aud, if this be necessary to recovery, tlie judgment is erroneous.
Tlie second point is, whether this be necessary. The contract, in this case, is executory; and though the vendee went into and remained in possession, yet this does not amount, of itself, to a waiver of objection to the title. There must be other circumstances, such as show that lie had a knowledge, of its defects, and intended to accept such title as could be made, relying, in case of failure, upon tlie covenants of warranty for redress. (6 Paige R., 407; Van Lew v. Parr, 2 Rich. Eq. R., 322.) Tlie facts in this ease are quite meagre. The vendor liad no title at tlie time of the sale, nor at tlie commencement of *123 the suit, nor until one clay before the trial. And the deed from (lie administrator to Nancy Taylor was not executed until after the commencement of the suit. What knowledge the vendee, at the. time of the sale, had of the title, was not proven; nor is it to he inferred from the facts in evidence. From the bond, it appears that he was apprised that the land was the headright of Rogers; but it does not appear that he knew under what tide it was claimed by the plaintiff. The bond of Rogers to Erwin, his assignment of the same to G. D. Taylor, and his devise to Mrs. Taylor, are not shown to have been on record, or that the defendant was apprised of their existence or contents, or even that thejr could have been ascertained by reasonable diligence. Under the facts, then, of this case, the instruction that a complete chain of title must he produced by the vendor was correct; and there is, therefore, error in the judgment.
What maybe the proper proceeding to procure the title remaining in the succession of Rogers must be left to the plaintiff as he may be advised. It is, however, deemed not inappropriate to throw out some suggestions in relation to the effect of the decree and title under the section of the statute of 1S-1S, (Dig., art. 11G2,) to which we have referred. At best, such title constitutes but a flimsy protection to the vendee or those claiming under him.. The decree is nod conclusive of the rights of parties interested in the property, although they are represented by the^administrator in the proceeding. On the contrary, it maybe but the commencement, and may of itself be the foundation, of repeated and protracted litigation. In the first place, it is the subject of attack for two years by any one interested in the estate, and may be annulled if good cause be shown why the same should not 1 ave been made; that is, if there be error in judgment, or fraud or collusion it the proceedings. If the vacation of the decree annuls all titles hold under it, though executed anterior to the institution of the suit of nullity, it would afford no protection to a purchaser, however innocent of tiro fraud or collusion of the parties to the suit, or ignorant or mistaken as to the errors in the judgment. But by the last proviso of the statute the decree of the Probate Courtis almost completely emasculated, and deprived of all conclusive force and conservative eflicacy. Under that, all married women, minors, and persons of. unsound mind interested in the estate shall have two years after the removal of their disabilities to have the order annulled, on showing cause. If creditors be included in the class of persons interested in tiré estate, the decree and titles emanating by virtue of its authority may be attacked by a host of assailants, either in conjunction, or in squads or singly, and this for the space of perhaps half a century or more, at least for the lifetime of the longest-lived husband of any female creditor or heir in existence at tlie date of the decree.
This occasion is not inappropriate for the expression of some opinion as to the supposed disability of the wife during marriage, and its total want of adaptation in its extent and operation, as dependent on this and similar provisions of statute, to the rights or liabilities of married women owning separate rights, interests, or property in this State. The doctrine of the incapacity of the/me covert, as it exists at common law, can claim such merit as, even in error and wrong, maybe attributable to systematic consistency and uniformity. If it be irrational and barbarous, it harmonizes and is in consonance with and is the reshlt of rules equally unreasonable and equally tinged with the reading of the dark ages. It is the legitimate inference from the portentous doctrine that during coverture the separate legal existence of the wife is extinguished; or, in oilier words, that, her reason, faculties, ami intelligence are entombed; while from her legal tomb, in the language of a forcible writer, (Hurlbut on Human Rights,)her husband gains an accession of power, dignity, and rights; “her submission exalts the throne of his power; her legal insignificance elevates his dignity, and her lost rights a've appropriated to himself.” This annihilation of the power of the one, and augmentation of that of the other partner in matrimony, has its origin in and is principally supported by that most cherished portion of the “ immemorial policy ” of the common law, viz, that by coverture *124 the property of the wife generally vested in the husband. If, by marriage, she was divested of her faculties as a rational being, and which to that moment she had fully enjoyed, she was injured, such was the consistency of wrong, and likewise stripped of her property.
But when, under the creative power of courts of equity in English jurisprudence, the separate estate of married women was brought into existence, their capacities, reason, and moral being were likewise resuscitated. Touching her separate property, the married woman had, in a great degree, all the capacities of a single woman. The right of property vested in her the right of disposition, control, and management; as to that, her existence, was not merged in that of the husband. She had distinct and independent rights, and could separately prosecute and defend them in courts of justice. (Vide Daniel’s Chan. Bract., chapter, Mabbied Women; Bright on Husband and Wife.)
The absorption of the wife’s property by the husband, on marriage, is effectually prohibited by the Constitution and laws of this State. The' property of the wife does not vest in the husband; and I see no reason why her faculties and powers as a moral agent., in relation to that property, should be supposed to vest. The doctrine on which such merger principally rested is swept away; and it is a maxim as old as the law, that where the reason of a rule ceases, itself should cease. If a married woman in England, by the benign power of a court of equity, be relieved from disability, and can protect her rights in her separate property, why should such incapacity bo inflicted upon her in Texas, to her own detriment and the injury of others? There can he sufficient guards thrown around the rights of women to protect them from the supposed evil artifices or negligence of their husbands, without destroying the rights of others, and fettering and chaining up property from alienation and rights from adjustment for forty and fifty years or more.
The law provides remedies for fraud or collusion, if they be pursued within a reasonable time; and if it be true, in fact or in law, that husbands, as a class and generally, will not, from knavery, folly, or negligence, prosecute or defend the rights of their wives in their separate property, lot the wives conduct their own suits in relation to their own property; or, if the husband be joined as a matter of form, let the court be required to institute such inquiry as will show satisfactorily that the wife is not succumbing to the malign influence and designs of her husband or others. The court is as competent for these inquiries asa notary public; and, further, it can immediately enforce a just respect for her rights. The subject is too comprehensive for discussion in this inode; and I will return to the effect and operation of a decree of the Probate Court, made under authority of the statute.
Can such decree or a title under it, of themselves, form a valuable consideration for a contract? This question I am strongly inclined to answer in the negative. Its value or force must depend on circumstances extraneous to the judgment and not upon the judgment itself, or the fact that the parties attacking the decree were represented in the proceeding by their agent, in whom by law (lie estate then temporarily vested. If it were proven that there are no creditors, or that the assets of the estate were otherwise sufficient to satisfy its obligations, or that títere are no married women or infants interested in the estate, the decree would then afford protection, and be a sufficient consideration on which to enforce a performance of the contract. But where it is otherwise, and where it does not appear from the facts or circumstances that the vendee is bound to accept such title, it would be unconscientious to force that upon him which, instead of being- a permanent security or muniment of title, might be a perpetuity of litigation and strife.
1Vhy should the defendant in this case, if there be married women or infants interested in the estate, be compelled to ascertain whether there be error in the judgment, or fraud and collusion between the administrator and Mrs. Taylor? The latter may elude his most diligent search, though in the lapse of twenty or thirty years subsequently it may transpire; and, if we were well advised that on established principles there was no error in the judgment, could we rest *125 securely upon this foundation, when the hundreds or thousands of overruled decisions show that the law itself, in effect, changes, and that what may ' not now he considered as error, may forty years hence be found to be so?
Note 38. — The same rule applies to executions. (Sadler v. Anderson, 17 T., 245.)
Note 39. — Todd v. Caldwell, 10 T., 236.
Note 40. — Neel v. Prickett, 12 T., 137; Cooper v. Singleton, 19 T., 260; Demaret v. Bennett, 29 T„ 262; Price v. Blount, 41 T„ 472.
Note 41. — Sober v. Hart, 36 T., 139.
If, on annulling the decree, l'edress could be liad only against the administrator and his sureties, as is the case generally for acts of malfeasance by the administrator, then the decree would afford all the protection which conid be demanded; but if it be otherwise, and such appears to have been the intention, of the law, the judgment of the court is no safeguard or security.
Where such title is offered by the vendor, it appears to me that the rule, generally should be, in cases where there is any doubt as t.o the validity of the decree, or where danger might be apprehended from the assertion of the right s of persons interested in the estate, and where the defendant is not compro-mitted to the acceptance of such title, that the contract should bo annulled, or the collection of the money enjoined until all the disabilities be removed, although these should continue for one half century. This rule would, of course, be subject to such modifications as would be required by the equities of particular cases. (1 Dev. & Batt., 84; 1 Da. R., 308.) The disabilities of infants and married worn n are designed as shields for their protection, and cannot be employed as swords to destroy the rights of others. If property must be shackled and fettered for their benefit, it cannot in this manacled condition be thrust upon others as a valuable consideration for an onerous contract.
I will not further pursue the consideration of this subject. I have made these remarks in order that there may he no necessity for this cause to appear again in this court, but that the title from the administrator may be perfected in such mode as tnay give security to the vendee, or at least such security as he is entitled, under the real facts of the case, to demand.
It is ordered, adjudged, and decreed that the judgment be affirmed, and that the plaintiff have until such time as may be deemed sufficient by the District Court to perfect the title from the succession of Robert Rogers, deceased, the validity of the title to bo determined by the court, and that in the meantime the collection of money on this judgment be enjoined. And should it, in the opinion of the court, be out of the power of the plaintiff to perfect the title, then the defendant shall be compelled to accept his deed with warranty, or restore the premises, and so account for the rents and profits as may accord with equity and justice, and that the injunction be then made perpetual ; and it is further ordered ttiat the appellee pay the costs heretofore ex ■ pended.
Ordered accordingly.