[No. 20113.  Department Two.  January 5, 1927.]

# LILY CURTIS, *Respondent,* v. J. C. OLIPHANT, *Appellant.*[1]

[1] SPECIFIC PERFORMANCE (5)—DEFENSES.  The purchaser of property is not entitled to specific performance where it appears that the vendor was unable to make her title good without his assistance and the modification of the agreement and that he did not agree, and was unable, to render the necessary assistance.

[2] VENDOR AND PURCHASER (46)—RESCISSION BY VENDOR—BREACH OF CONDITION.  Where the vendor is unable to make her title good, as required by the terms of a preliminary contract of sale, she is entitled to have the contract terminated so far as her obligations to convey are concerned.

[3] SAME (50)—RESCISSION BY VENDOR—RESTORATION OF EARNEST MONEY.  Where there is no specified time for the completion of the deal and the vendor was unable to make her title good within the time provided therefor, she has no right to the earnest money deposited, upon calling the deal off, because of the purchaser's failure to meet a cash payment required by the contract.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 16, 1926, upon findings in favor of the plaintiff, in an action to quiet title and forfeiture of earnest money paid on a contract for the sale of land.  Affirmed in part and reversed in part.

*Roberts & Skeel,* for appellant.

*Burkheimer & Burkheimer, James H. Buchanan,* and *Poe, Falknor, Falknor & Emory,* for respondent.

PARKER, J.—The plaintiff, Mrs. Curtis, commenced this action in the superior court for King county seeking the quieting of title in herself as against the claimed interest of the defendant, Oliphant, in certain

[1]Reported in 251 Pac. 849.

described real property situated in Seattle, and also forfeiture of three hundred dollars earnest money paid by Oliphant to her agent upon a preliminary contract in the form of an earnest money receipt, for her sale of the property to him. Oliphant, by his answer and cross-complaint, resists the claims of relief made by Mrs. Curtis, and also seeks specific performance of the contract for the sale of the property to him. The case being of equitable cognizance, the trial proceeded before the court sitting without a jury, resulting in a decree awarding to Mrs. Curtis both the quieting of title and the forfeiture of the three hundred dollars earnest money, as prayed for by her. From this disposition of the case in the superior court, Oliphant has appealed to this court.

On January 23, 1925, Mrs. Curtis, as owner of the property in question, duly authorized H. E. Nelson, as her agent, to find a purchaser therefor. On the following day, Nelson found a prospective purchaser in the person of Oliphant. A preliminary contract of purchase in the form of an earnest money receipt was accordingly entered into, as follows:

"Seattle, Wash., Jan. 24, 1925.

"[1] Received from J. C. Oliphant three hundred ($300.00) dollars, on account of the purchase price of the following described real estate in King county, Washington, to-wit: Lot 2 Block 26, Sarah A. Bell's Addition (1908-10 8th Ave.)

"[2] Total purchase price is $18,500.00; $6,000 cash, balance to be paid as follows: $4,500.00 one year, $8,000.00 on or before three years at 6% interest.

"[3] Title is to be shown by abstract or title insurance furnished by seller, and 10 days allowed for examination.

"[4] If the title is not good, and cannot be made good within 30 days from receipt of written notice of any defects, this agreement is void, and the earnest money shall be refunded. But if the title is good, and

the purchaser fails to carry out this contract, the earnest money may at seller's option be forfeited as liquidated damages.

"[5]   The property is to be conveyed by warranty deed, free of encumbrances.

"[6]   Any other encumbrances may, at the option of seller or his agent, be paid out of the cash portion of the purchase price at the consummation of the sale.

"[7]   Rents, insurance and interest on encumbrances, if any, are to be adjusted as of date deed, or contract is delivered.

"[8]   It is understood that the agent is in no wise responsible for the delivery of this title, and in the event of the agent not having an exclusive contract for the sale of said property this agreement is issued subject to the approval of the owner thereof within 5 days.

"[9]   Time is of the essence of this agreement.

"[10]   Purchaser agrees to buy said property on above terms.     (Signed) J. C. Oliphant, Purchaser.

"(Signed) Lily Curtis, Seller

"By H. E. Nelson, Agent."

"Seattle, Wash., Jan. 26th, 1925.

"I hereby approve this sale upon the foregoing terms.               (Signed) Lily Curtis, Owner."

We have ourselves numbered the paragraphs in this contract for convenient reference. As we proceed, let it be remembered that this contract contains no forfeiture provisions other than as to the three hundred dollars earnest money, and that, as to that forfeiture, there is no specified time for performance by which such forfeiture can automatically occur without notice of election and an offer of reasonable time for performance.

On February 10, 1925, there was procured in behalf of Mrs. Curtis, in compliance with paragraph 3 of the contract, and furnished to Oliphant, a written statement of the Washington Title Insurance Company showing the condition of the title to the property.

This statement was treated by all parties as a sufficient abstract showing the condition of the title for the purpose of determining what was necessary to be done to make the title "free of encumbrances," as called for by paragraph 5 of the contract. It appeared by this abstract statement and an unrecorded deed in the possession of Mrs. Curtis, in which she is named as grantee, that she was then the owner of the property, subject to a number of mortgage, judgment and tax liens, some of which were then in litigation.

On February 20, 1925, Mrs. Curtis, with her attorney, was in conference with Oliphant with a view of making arrangements for the removal of these liens against the property. It was then apparent that they aggregated in amount more than the six thousand dollars cash payment to be made by Oliphant upon the agreed sale price of the property, in pursuance of paragraph 2 of the contract, and that Mrs. Curtis was unable to remove all of these liens without the aid from Oliphant of increasing the six thousand dollar cash payment to the extent of one thousand dollars or one thousand five hundred dollars, and to that extent reducing the four thousand five hundred dollar payment to be made in one year. This, seemingly, Oliphant then tentatively agreed to do, but did not then produce any money or evidence of his ability to do so, other than to inform Mrs. Curtis and her attorney that he then had five thousand dollars on deposit with the title insurance company. Indeed, the evidence warrants the conclusion that Oliphant was not then able to pay more than five thousand dollars towards the consummation of the deal, though the cash payment was to be six thousand dollars, less the three hundred dollars earnest money already paid. It was then agreed that the parties would meet again four days later, on February 24th, with a view of closing

the deal, though no specific agreement was then made as to what would be ultimately agreed to when they would meet again on February 24th. Mrs. Curtis' attorney was in the meantime to procure information as to the amounts necessary to satisfy each of the claims against the property.

On February 24th, Mrs. Curtis and her attorney were at the appointed place of meeting. Apparently Oliphant was also there, though counsel, in their argument, seem to disagree as to that. However, Mrs. Curtis' attorney had then information as to the amounts necessary to then discharge the claims, which aggregated more than the six thousand dollars agreed cash payment on the purchase price. Some of these claims were in litigation and could not then be satisfied, except by Mrs. Curtis paying larger amounts than she conceded due thereon. Thus she was unable to then make her title good, except by yielding in some substantial measure her claimed legal rights. Some suggestion was then made by her attorney, looking to holding the settlement of these litigated claims in abeyance until the termination of their litigation and depositing a portion of the cash payment in some place agreeable to both parties, sufficient in amount to fully satisfy the liens in whatever amounts might ultimately be required for that purpose; but Oliphant never agreed to that. Oliphant, if present at the meeting of February 24th, did not then tender any money looking to the consummation of the deal. Indeed, the evidence is, to us, quite convincing that he was not then able to produce more than five thousand dollars looking to the final consummation of the deal. Nor was he willing to accept the title subject to the encumbrances. So, nothing came of the meeting of February 24th. Soon thereafter there was a conversation between Oliphant and Mrs. Curtis' attorney, plainly indicating that

Oliphant was still unable to close the deal for want of sufficient funds available to him, but that he expected to have sufficient funds within a short time for that purpose.

On February 27, 1925, Oliphant caused the contract, that is, the earnest money receipt, to be recorded in the office of the auditor of King county. On March 10, 1925, Mrs. Curtis, by her attorney, without further notice or demand upon Oliphant that he come forward with the full cash payment, commenced this action, which was followed by Oliphant's answering and cross-complaining, alleging an offer to pay seven thousand five hundred dollars cash; also an offer of one note for three thousand dollars, due in one year, and one note for eight thousand dollars, due in three years, both secured by a mortgage upon the property executed by Oliphant and his wife to Mrs. Curtis. The evidence, we think, renders it plain that no effectual offer or tender of this nature was made until some time after the commencement of this action.

There is considerable in the evidence relating to a controversy between Mrs. Curtis and Nelson, her agent, which, it is claimed, shows the failure of the consummation of the deal to be her fault. This controversy related to Mrs. Curtis' unrecorded deed being in Nelson's hands and her successful efforts in compelling him to surrender it to her. We think this is wholly beside the question here, and that that controversy is a matter with which Oliphant has no concern. There is also considerable in the evidence as to claimed negotiations between the parties after the commencement of this action by Mrs. Curtis. It is plain that whatever occurred of this nature was wholly with reference to a possible compromise of this action then pending, and is therefore of no consequence in our present inquiry. While the trial judge did not make any formal

findings, we think it is apparent that he viewed the facts substantially as we have thus summarized them. We also think this is a fair summary of the controlling facts as disclosed by the evidence.

[1]   The contentions there made in behalf of Oliphant are to us somewhat inconsistent. His counsel, as we understand them, argue that Mrs. Curtis did not have good title and could not make good title, and yet argue that she be compelled by decree of specific performance to convey to him good title. True, they also argued that he offered to increase the cash payment on the contract price sufficient in amount to enable her to make her title good, but we think the evidence does not warrant the conclusion that his offer in that behalf was effectual to that end, in that he did not, in any event, tender sufficient for that purpose until after Mrs. Curtis claimed, by the commencement of this action, the right to have the contract terminated. He, in effect, up to that time, refused the title she was then able to give him, at no time tendering or offering, looking to a completion of the deal, any sum in excess of five thousand dollars, even considering that he effectually offered to advance that much of the agreed cash payment. In other words, he did not, before the commencement of this action, put it within her power to perfect her title, or even agree that the settlement of the litigated lien claims might be held in abeyance and the deal be completed in other respects. This, it seems to us, effectually negatives his right of specific performance at any time prior to the commencement of this action.

[2]   Now, did Mrs. Curtis have the right, at the time of the commencement of this action, to have the contract decreed terminated and she be under no further obligation to perform the same by making conveyance to Oliphant? It seems to us that she

then had such right, upon the theory that she could not, up to that time, make her title good. The time for her doing so had then expired under paragraph 4 of the contract. Oliphant had not agreed to any further extension of the time to enable her to satisfy the litigated lien claims, which could not then be satisfied by her without yielding, in some substantial manner, her claimed rights in reference thereto. Thus it seems to us that she then had the right to consider the contract terminated so far as her obligation to convey is concerned.

[3] The question of Mrs. Curtis having the right to the forfeiture and retention of the three hundred dollars earnest money paid to her agent, which was in law a payment to her by Oliphant, is another matter. We have seen that there was no specified time for the completion of the deal by the terms of the contract, though there was a time, that is, thirty days, specified in paragraph 4 of the contract for the making of the title good; and that Mrs. Curtis did not give Oliphant notice to come forward with the full cash payment, with an offer of a reasonable time for his doing so, nor could she give him good title without his making a larger cash payment than the contract called for. This, it seems to us, clearly precludes her right of forfeiture of the three hundrd dollars earnest money. Mrs. Curtis' right to call the deal off was not the result of Oliphant's failure to come forward with the cash payment according to the contract, but manifestly was the result of her failure of ability to make good title.

Under all of the circumstances we are of the opinion that the decree should be affirmed, in so far as it cancels the earnest money receipt contract, the record thereof in the auditor's office, and quiets Mrs. Curtis' title as against the claim of Oliphant to the property; that the

decree should be reversed in so far as it awards to Mrs. Curtis forfeiture of the three hundred dollars earnest money; and that Oliphant is entitled to be awarded, as against Mrs. Curtis, return of the three hundred dollars earnest money by a judgment in his favor against her in that sum. It is so ordered.

Both parties having been in a measure successful in this court, neither shall recover costs here against the other.

TOLMAN, C. J., ASKREN, and MACKINTOSH, JJ., concur.