## BLOCK et al. v. BURCH.

### No. 4318.

Court of Civil Appeals of Texas. Amarillo.
Nov. 26, 1934.

Rehearing Denied Jan. 14, 1935.

Jno. P. Slaton, of Hereford, and Underwood, Johnson, Dooley & Huff, of Amarillo, for appellants.

W. H. Russell, of Hereford, and Otis Trulove, of Amarillo, for appellee.

HALL, Chief Justice.

On May 27, 1930, G. W. Burch and B. F. Block entered into a written contract by the terms of which Burch agreed to sell Block all of sections 33 and 27, the south 1/2 of section 26 and the southwest 1/4 of section 23, township 4 north of range 2 east, Deaf Smith county, containing 1,760 acres of land. Block died in May, 1932, leaving a written will which had been admitted to probate in Carson county. Ida M. Block, J. C. Freeman, and R. E. Underwood were named as independent executors of the will and trustees of the property belonging to the estate of the said B. F. Block.

Appellee, Burch, filed this suit against the executors named in the will and also against Ida M. Block, individually, B. F. Block, Jr., William Block, Ivan Block, Kenneth Block, and Vernelle Block, the children and heirs of B. F. Block, deceased, and his wife, Ida M. Block, alleging a breach of the contract for the sale of said lands.

The case was tried upon plaintiff's first amended original petition, which consists, first, of a formal count in trespass to try title, and, by the second count, it is alleged, in substance, that B. F. Block was deceased; that he had left a written will; that the written contract had been entered into, a copy of which was attached to the petition; that the consideration for the sale of the 2¾ sections of land was $21 per acre, aggregating $36,960 to be paid as follows: $5,000 in cash upon delivery of title; $12 per acre on August 1, 1930; the balance to be evidenced by vendor's lien notes executed by Block, payable to the plaintiff, Burch, in five equal installments; that by the terms of the contract plaintiff was to furnish abstract of title within ten days from the date of the contract. Block was to have ten days within which to have the abstract examined, and, if found defective, reasonable time, not to exceed sixty days, should be allowed within which to have the defects corrected. It was agreed that when title, as disclosed by the abstract, should be perfected, that the $5,000 should be paid to plaintiff by Block; that the plaintiff would then execute a warranty deed and place the same in the First State Bank of Hereford to be delivered to Block upon the payment of the sum of $12 per acre on August 1, 1930; and that the above described notes should be executed and delivered.

Plaintiff then alleged that the contract was executed and placed in escrow in said bank, together with $2,500 deposited by Block to be applied as part of the cash consideration agreed to be paid for the lands in the event the title should be approved; otherwise said sum was to be returned to Block.

Plaintiff further alleged that he furnished the abstract of title; that Block approved the title, and the $5,000 cash consideration was paid to plaintiff and the five installment notes were executed and placed in escrow in the bank, together with the contract; that plaintiff, Burch, joined by his wife, executed a deed conveying said lands, which was also deposited in escrow in said bank and was to be delivered upon the payment of the sum of $12 per acre on the land; that Block did not pay the said sum of $12 per acre on or before August 1, 1930, and had not paid the same at the time of the filing of the suit; that on or about August 21, 1930, he paid the sum of

$4,400, which amounted to $2.50 per acre; that at the time of the execution of the contract, the 1,760 acres of land described therein were part of a larger body of land owned by plaintiff against which large body there was a deed of trust securing an indebtedness in the original sum of $50,000 principal, which had been reduced at the time of the making of the contract to $38,800; that there was a second lien against the large body of land; and that the $12 per acre which Block agreed to pay was to be applied by plaintiff on the outstanding indebtedness which was secured by a lien.

Plaintiff then alleged that the payments were not made by Block in accordance with the terms of the contract; that after his death, the defendants refused to consummate the sale and plaintiff had thereafter elected to treat the contract as abandoned; that on account of the breach, plaintiff had been damaged in an amount equal to the difference between the contract price of the land, which he alleged was $21 per acre, and its market value at the time of the breach, alleged to be $8 per acre, or the aggregate amount of $22,880, less payments made by B. F. Block aggregating $12,968, leaving the sum of $9,912 which plaintiff sought to recover as damages. Plaintiff also claims damages in the sum of $1,760, alleged to have been paid by him as a commission for the sale of the land and sought also to recover $1,500 for the loss of rentals thereon.

The defendants filed separate pleas of privilege, which were overruled by the court. They then answered, alleging that the plaintiff and Block had entered into the contract by the terms of which Block, subject to the provisions of the contract, agreed to purchase the land mentioned; that plaintiff was to furnish an abstract showing good and merchantable title to the lands in him; that an abstract was furnished and examined and it disclosed an indebtedness against the premises for approximately $50,000 held by the Ætna Life Insurance Company and secured by a lien on the land; that the abstract disclosed other defects in the title; that the plaintiff had never paid or caused to be paid the indebtedness, and that the same was unpaid at the time of the trial and was secured by a valid lien on the land by reason of which fact plaintiff had defaulted in performance and defendants were thereby fully relieved from performance on their part; that by reason of the existence of said lien plaintiff had never been in a position to perform and was not entitled to maintain the suit to enforce the contract against defendants.

Defendants further specially denied that the value of the land at the time mentioned in plaintiff's petition was less than $21 per acre, by reason of which fact plaintiff had not been damaged in any sum.

By cross-action defendants allege the execution of the contract, the furnishing of an abstract, the examination thereof, which disclosed the existence of the lien above mentioned, and that plaintiff had never paid the indebtedness or had said lien released, and, after being unable to perform his contract, had treated the same as rescinded; that by reason of the breach on the part of plaintiff, defendants were entitled to have refunded all sums of money which had been paid to Burch under the contract. They further, by way of cross-action, pleaded that the value of the lands had been at all times since the execution of the contract not less than $21; that plaintiff had been paid the aggregate sum of $12,968; that if defendants had breached the contract, plaintiff had not been damaged in any sum and that it would be inequitable to permit plaintiff to retain the money received and hold the lands involved; that defendants were therefore entitled to have all sums paid under the contract returned to them. Defendants pray that plaintiff take nothing, except the title and possession of the lands, and that they have judgment in the sum of $12,968 against plaintiff and in the alternative so much of said sum as they might be entitled to recover after deducting the damages, if any, which plaintiff has sustained.

By a supplemental petition, plaintiff alleged that the 1,760 acres involved were a part of a larger tract against which there was an indebtedness in the original principal sum of $50,000 held by the Ætna Life Insurance Company, which had been reduced to $38,800; that if defendants had paid the $12 per acre on August 1, 1930, as they were bound by the contract to do, it would have been applied by Burch on the indebtedness and a release of the lien would have been obtained as to said 1,760 acres; that the $2.50 per acre paid by Block during his lifetime had been paid to the Stock Yards National Bank, who held a second mortgage lien against the land; that the remaining $9.50 per acre of the $12 per acre contract price, not having been paid by Block or his heirs or representatives, plaintiff had been unable to pay the life insurance company the sum of $10 per acre and thereby secure the release of the 1,760

acres. Plaintiff further alleged the waiver of any objections to title on account of the mortgage indebtedness in the payment of the $4,400 and that defendants were estopped from asserting any such defense.

There was a trial to the court without a jury, resulting in a judgment that plaintiff recover $7,373 of and from the defendants. The court found that the value of the land at the date of the breach was $12 per acre; that the plaintiff was entitled to recover $1,760 paid as commission and that from said amount the payments aggregating $12,900 made by Block should be deducted; and that the plaintiff should recover the sum of $2,250 as the rental value, and, after deducting such amount, arrived at the sum decreed to be due plaintiff.

The contract between the parties is as follows:

"State of Texas, Deaf Smith Co.

"This contract and agreement made and entered into this the 27th day of March, A. D. 1930, by and between G. W. Burch of Tulia, Texas, First Party, and B. F. Block of White Deer, Texas, Second Party;

"Witnesseth; that for the consideration of the sum of $21.00 per acre ($36,960.00) paid as below stipulated, First Party hereby sells to Second Party all of 33, all of Section No. 27, S. ½ Section No. 36, S. E. ¼ Section 23, all in Township No. 2, North Range 2 East, containing 1,760 acres of land.

"Said consideration to be paid as follows: $5,000.00 cash upon delivery of title as below stipulated, and $12.00 per acre August 1, 1930, and the balance evidenced by vendor's lien notes executed by second party to first party in five equal installments due on or before their due dates and bearing interest from date at the rate of 6%.

"First Party agrees to furnish an abstract of title to said land within ten days from date hereof, and Second Party to have ten days in which to have said abstract examined, and if defects are found, then a reasonable time not to exceed 60 days shall be given in which to have such defects, if any, cured.

"It is mutually understood and agreed that when the title as disclosed by said abstract is approved that the said $5,000.00 shall be paid by Second Party to First Party and the First Party shall execute a warranty deed and place same in First State Bank of Hereford, Texas, which deed shall be delivered to second party upon the payment of the said $12.00 per acre on August 1, and the execution of the said five equal installments mentioned above.

"Second party hereby places with a copy of this $2,500.00 in said First State Bank of Hereford, Texas, which shall apply as part payment on said land, it being understood however, that if title shall fail and cannot be delivered that said $2,500.00 shall be returned to Second Party.

"Taxes on said property shall be prorated as of April 1, 1930, between First and Second Parties, First Party paying one-fourth and Second Party three-fourths, basis of 1929 tax receipt.

"Second party to pay interest on all deferred payment from date of deed.

"Witness signatures of parties hereto this day and year first above written at Hereford, in Deaf Smith County, Texas, where the covenants and agreements herein shall be performed.

"[Signed] G. W. Burch, First Party,
"B. F. Block, Second Party."

■ The covenant which obligates Burch to execute his warranty deed and place it in the escrow bank and "which deed shall be delivered to" Block upon the payment by Block of the $12 per acre on August 1, 1930, and the covenant of Block to pay on that day are dependent covenants.

"It is a general rule that where covenants are made by two parties to a deed or agreement and are such that the thing covenanted or promised to be done on each part, enters into the whole consideration for the covenant or promise on the other part or where the acts or covenants of the parties are concurrent and to be done or performed at the same time, the covenants are dependent and neither party can maintain an action against the other without averring and proving performance on his part. Hence it is that covenants for conveyances of the premises and for the payment of the consideration, in a contract for the sale of lands, are regarded as dependent covenants." 7 R. C. L. 1089, § 7.

The record shows that Block had not paid the $12 per acre on August 1, 1930, but it also shows that Burch had not succeeded in having the lands involved released from the blanket lien held by the Ætna Insurance Company, which covered this and other property belonging to Burch. Being dependent covenants, both parties were required to perform their respective obligations at the same time.

■■ The rule is established that if the vendee in an executory contract fails or refuses to pay the purchase money and close the deal, the vendor may, as an alternative

remedy, recover damages provided he owns the land [Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120], but the vendor must show a merchantable title in himself—where the contract of sale requires it—[Jackson v. Martin, 37 Tex. Civ. App. 593, 84 S. W. 603], and is required to allege that the abstract of title, where the contract of sale requires him to furnish one, shows a good title in him [Bowles v. Umberson (Tex. Civ. App.) 101 S. W. 842; Smith v. Fort (Tex. Civ. App.) 58 S.W.(2d) 1080].

 Burch contends that it was the duty of Block and his legal representatives to pay the $12 per acre in order that he might be able to secure a release of the lands in question from the Ætna deed of trust. There is no such provision in the contract and the covenants being dependent, he was not entitled to require the payment before the delivery of the deed. Block had paid $2.50 of the $12 payment, which had been used in satisfying a debt and lien in favor of the Stock Yards National Bank of Chicago. He could not have been required to make payment until Burch perfected his title, but his voluntary act in doing so in no way bound him to pay the remaining $9.50 prior to the delivery of the warranty deed provided for in the contract. He had the right, when paying the $2.50, to rely upon Burch's promise and ability to have the Ætna lien released before making further payment.

Burch testified that he knew he had to procure a release of the liens shown in his abstract; that the lien of the Ætna Life Insurance Company was still outstanding and he had defaulted in the payment of interest for more than a year; that he was not in position to pay off the indebtedness and get the lien discharged and had not been in position to do so at any time since the contract was entered into; that in the spring of 1930, the debt to the Ætna Company of $50,000 was reduced to $38,800 and nothing had been paid upon the principal since that time; that he did not have the money and could not get it and was not in position to reduce the principal any more than he had; that it was impossible for him to clear the lien on the land without first getting the money from Block under the contract. Burch pleaded that the lien was outstanding and unpaid, that he could not discharge it except by using the money of the purchase which should have been paid on August 1, 1930. As stated above, Block had paid at the rate of $2.50 per acre and this had been used in discharging the lien held by the National Stock Yards

Bank. According to the figures given by Burch, he is mistaken when he said he could have discharged the Ætna Company lien if Block had finished paying the $12 per acre on August 1, 1930. After discharging the Stock Yards Bank lien, only $9.50 was still due from Block. Westbrook, the vice president of the Ætna Life Insurance Company, testified that on several occasions, when as much as $10 per acre had been paid upon the principal of the loan of any subpurchases, and the accrued interest to the time the payment was made and three months' advance interest additional paid as a bonus, that the Ætna Company had released the lands purchased from the lien. If the defendants, the Blocks, had paid the balance of $9.50 per acre, it would have lacked 50 cents per acre of being enough to take up the amount required as a payment on the principal. Then, in addition, there would have been no money to discharge the interest, which amounted to approximately 40 cents per acre, and the plaintiff would have lacked approximately $1,500 of having enough money to procure the release of the 1,760 acres involved. It was not shown that the Ætna Company was bound by any obligation to release any part of the land covered by the $50,000 mortgage until the whole indebtedness had been paid. Having done so on two or three occasions was purely a matter of grace.

The contention made by Burch that he was entitled to have the $12 per acre paid before delivering the deed and that the failure of Block to make the payment on August 1, 1930, estopped the defendants is not sound as a legal proposition.

In Brown v. Lee (C. C. A.) 192 F. 817, 819, Lee agreed to sell certain land to Brown for $12,000, payable $3,500 in cash, $2,000 by transfer of land, and a balance to be evidenced by four notes. Lee was to furnish an abstract of title and convey the land by warranty deed. At the time of the contract, it was known that the title to Lee's land was in four persons, the Barefields, one of whom was a minor, and, in order to obtain a good title, Lee had to acquire it from the Barefields. After the time for completing the sale, which had been extended at Brown's request, he refused to complete the deal, writing Lee that "the 'trade is off; this is final.'" It was shown that the lands were incumbered. Lee filed suit to recover for breach of the contract. After stating the facts, the court said, in part:

"His [Lee] evidence and his correspondence with Brown show that he depended on Brown to make the cash payment on the con-

tract here sued on so that he could use the money to complete the purchase from the Barefields. The covenant of Brown to pay to Lee $3,500 in cash and the covenant of Lee to convey an unincumbered title to the lands to Brown are dependent covenants. Brown had no right to demand the conveyance from Lee before he had paid the $3,500, and certainly Lee had no right to demand of Brown the payment of the $3,500 before he was able to convey the title to him. Bank of Columbia v. Hagner, 1 Pet. 455, 7 L. Ed. 219. A different construction of such contracts might lead to the greatest injustice, for a purchaser, to avoid a breach of his contract, might be forced to pay the purchase money and yet fail to obtain the property for which he had paid it. The delivery of the deed and the payment of the purchase money in such contracts are to be concurrent acts. * * * Lee, the vendor, contends that the proof shows that the Barefields had executed to him a deed conveying a good, unincumbered title, and that the deed was so deposited that if Brown had complied with his agreement he could and would have used the cash received from Brown to have paid the Barefields, and that he would have then been able to make a proper deed to Brown. We waive the consideration of Brown's contention that the title to Lee from the Barefields would have been defective if delivered to him. Conceding that it would have been good, Lee's right to recover would depend on his right to require Brown to advance the money with which he would obtain the title from the Barefields. Brown had not contracted to do this. By his contract he was to pay the purchase money concurrently with his receipt of the title from Lee."

See, also, Grandy v. McCleese, 47 N. C. 142; McGehee v. Hill, 4 Port. (Ala.) 170, 29 Am. Dec. 277; Nicolopoolos v. Hill, 217 Ala. 589, 117 So. 185, 59 A. L. R. 185; Greenberg v. Lannigan et al., 263 Mass. 594, 161 N. E. 882; Curtis v. Oliphant, 141 Wash. 496, 251 P. 849; Nelson v. Jardine, 46 Idaho, 82, 267 P. 447; Wells, Fargo Co. v. Page, 48 Or. 74, 82 P. 856, 3 L. R. A. (N. S.) 103.

By supplemental petition Burch alleged that Block knew, at the time the contract of sale was executed, that the land was covered by a lien to secure a debt of $50,000 and that the abstract which he furnished disclosed said indebtedness; that the title was passed upon by attorneys representing Block without raising such objection; that Block went into possession soon after the execution of the contract, occupied, used, and enjoyed the same during his lifetime; that after his death his legal heirs and representatives occupied, used, and enjoyed the lands to the exclusion of plaintiff and by their acts and conduct the said B. F. Block, his heirs, and legal representatives have waived any objection to said title or alleged defects therein on account of said mortgage indebtedness or otherwise and are not estopped from asserting any defects in title to said lands and are estopped from setting up any defects in the title in avoidance of the contract.

If this can be considered as a plea of waiver or estoppel against the defendants' right to plead a defective title in bar of their action for damages, we cannot assent to the contention.

In an early case in Texas, Jones v. Taylor, 7 Tex. 240, 56 Am. Dec. 48, where the same contention was made, Chief Justice Hemphill, after stating that the legal title had not been transferred to the vendor, said:

"The second point is, whether this be necessary. The contract, in this case, is executory; and though the vendee went into and remained in possession, yet this does not amount, of itself, to a waiver of objection to the title. There must be other circumstances, such as show that he had a knowledge of its defects, and intended to accept such title as could be made; relying, in case of failure, upon the covenants of warranty, for redress."

It cannot be contended that Block or his heirs or legal representatives were relying upon the covenant of warranty in the deed, because the deed had never been delivered. It appears from the whole record that upon examination of the abstract showing the existence of the $50,000 incumbrance, neither party showed any disposition to avoid the contract. In fact, Smith, one of the brokers, whose partner prepared the contract, stated that the provision for the payment of $12 per acre on August 1, 1930, was inserted in order that Burch might have that money with which to secure a release of the Ætna Insurance Company's lien.

The same rule is declared in Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec. 333, where Judge Hemphill said:

"The general rule is, that as long as the contract remains executory, the purchaser shall not be compelled to pay the purchase money and take a defective title, except the purchase has been made at his own risk or he has agreed to accept such title as the vendor can give. * * * Nor will the mere fact that the vendee has gone into and remained in possession amount, in itself, to

a waiver of objection to the title." Gober v. Hart, 36 Tex. 139.

■■ The court erred in rendering a personal judgment against the minor children of Block. Under no circumstances could they be held personally liable for any damages.

■ It is said in De Proy et al. v. Progakis (Tex. Com. App.) 269 S. W. 78, that a minor cannot appear in person nor by an attorney of his own selection, but can only appear by guardian ad litem appointed by the court, though there is authority to the effect holding that a judgment rendered, affecting the interest of a minor in the litigation where no guardian ad litem has been appointed, is not void but voidable. In view of another trial, we suggest that the better and safer course to pursue is for the trial court to appoint a guardian ad litem for the minors.

In Stinson v. Sneed, 163 S. W. 989, this court has stated the rules governing the measure of damages under various circumstances, but in view of another trial and uncertainty as to what the evidence may show, we cannot declare what rules should govern at that time. See, also, 5 Thompson on Real Property, § 4327.

The judgment is reversed and the cause remanded.