**William Carl PFLUGER et al., Appellants,**

v.

**James H. CLACK and wife, Barbara Culver Clack, Appellees.**

**No. 11–94–010–CV.**

Court of Appeals of Texas, Eastland.

May 4, 1995.

Rehearing Overruled June 1, 1995.

Walter W. Pfluger, Shanon, Porter, Johnson, Pfluger & Davis, LLP, San Angelo, for appellants.

James L. Weeks, Sweetwater, Max E. Ramsey, Odessa, for appellees.

## OPINION

ARNOT, Chief Justice.

William Carl Pfluger and LuNeil Stribling, Independent Executrix of the Estate of Stanley C. Stribling, Deceased, (hereinafter referred to as the Pflugers) agreed to sell the surface estate of a ranch in Nolan County to James H. Clack and his wife, Barbara Culver Clack. The Pflugers and the Clacks executed a standard contract of sale.[1] The contract provided that the Pflugers would furnish an owner's title policy. The Clacks made an earnest money deposit of $5,000, and Beall Abstract & Title Co., Inc. issued a title commitment on the property. The Clacks raised a title objection and refused to close on the contract. When both the Pflugers and the Clacks requested that the escrow money be paid to them, Beall Abstract filed this suit as an interpleader action. Trial was to the court which found that the Clacks were entitled to terminate the contract, to the return of their $5,000 earnest money deposit, and to the award of reasonable attorney's fees and court costs. The court filed its findings of fact and conclusions of law. The Pflugers appeal, bringing seven points of error. We affirm.

In their Points of Error Nos. 1, 2, 3, 4, 6, and 7, the Pflugers complain that the trial court erred in its construction of the contract and the title commitment and in its findings that the Pflugers had an obligation to cure the Clacks' objections to the title. The Pflugers assert that the title objections made by the Clacks were not valid, permissible, or timely under the plain and unambiguous language of the contract and commitment.

By the terms of the contract of sale, the Pflugers agreed to sell to the Clacks the surface estate of approximately two sections of ranch land in Nolan County. All of the

minerals under these tracts of land had been previously conveyed by the Pflugers' predecessors in title to third parties. The contract provided for the sale of the property together with "all rights, privileges, and appurtenances pertaining thereto; *including but not limited to, water rights.*" (Emphasis added)

The contract of sale further stated that the property would be subject to the following exceptions and reservations:

*A. Minerals, royalties, and timber interests:*

*(i) Presently outstanding in third parties:*

All oil, gas, coal, lignite, iron, uranium, sulphur and other minerals in and under and that may be produced from the above property, together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating, and developing said lands for oil, gas, coal, lignite, iron, uranium, sulphur and other minerals and removing the same therefrom, by whatever method produced or extracted, have been previously conveyed to third parties by predecessors in title.

*(ii) To be additionally retained by Seller:*

None: it is the Seller's intention to convey to the Buyer the SURFACE ESTATE ONLY of the herein-described Property.

*B. Mineral Leases:*

This agreement is subject to oil and gas leases of record.

Beall Abstract issued a title commitment on behalf of the Chicago Title Insurance Company. In its commitment, Chicago Title specifically excepted from its coverage title to all of the oil, gas, and minerals previously conveyed by the Pflugers' predecessors in title and further specifically excepted specific easements and rights of way of record by reference to their respective dates, grantors,

---

1. The farm and ranch earnest money contract, Form TREC No. 25-0, was promulgated by the Texas Real Estate Commission. In this opinion, the language of the preprinted form is indicated by italic print and the language added by the parties is shown in regular type.

grantees, and recording information and specific oil and gas leases of record by reference to their respective dates, lessors, lessees, and recording information.

Prior to closing, James H. Clack requested that his son examine the title. After a title search, Gene Clack, an attorney, raised an objection to the Pflugers' title based on the following instruments of record: a general warranty deed which contained a reservation of the water rights dated December 28, 1965, from R.H. Jordan and wife to Robert R. Petty and wife and which was recorded in Volume 199, Page 328 of the Deed Records of Nolan County and three oil and gas leases not specifically set out or described in the title commitment. All three leases were beyond their primary term, and there was no production on the ranch at the time the contract was executed.[2]

The question presented by this appeal is whether a seller can contractually force a buyer to close on title insurance when the buyer raises an obvious title defect that was omitted by the title company in its commitment letter. To answer this question, we must first address the three issues which run throughout the Pflugers' points of error.

■■■ First, the Pflugers urge that the Clacks' title objections were not valid under the plain language of the contract of sale and title commitment. It is clear that the parties agreed to sell and purchase the fee simple title to the surface estate of the ranch. The objectionable reservation contained in the 1965 deed recites:

(1) GRANTORS do hereby EXCEPT and RESERVE from this deed, unto themselves and the other record owners thereof, all of the oil, gas and other hydrocarbons and all other minerals in and under the above described land ... subject to and excepting the surface minerals conveyed to GRANTEES hereby.

(2) GRANTORS do further EXCEPT and RESERVE from this deed all subsurface water of whatsoever kind and character in and under said land necessary and proper for the purpose of investigating, through seismograph and any other scientific procedures, exploring, prospecting, drilling, mining for, producing, whether through primary or secondary recovery by water flooding, and owning oil, gas and/or all other minerals reserved by GRANTORS and the further purpose of saving, treating, storing, transporting and disposing of said oil, gas and other minerals from said land, to the end that GRANTORS shall have the right to use and enjoy all of said subsurface water in and under said land necessary and proper for the aforesaid purposes according to the usual practices and procedures of the oil industry.

Water, surface or subsurface, unsevered expressly by conveyance or by reservation, is part of the surface estate. *Sun Oil Company v. Whitaker,* 483 S.W.2d 808 (Tex.1972); *City of Corpus Christi v. City of Pleasanton,* 154 Tex. 289, 276 S.W.2d 798 (1955); *Texas Co. v. Burkett,* 117 Tex. 16, 296 S.W. 273 (1927); *Fleming Foundation v. Texaco,* 337 S.W.2d 846 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.). The mineral owner having the dominant estate has an implied easement to use such water, both surface and subsurface, as is necessary for the exploration and development of the mineral estate. See *Sun Oil Company v. Whitaker,* supra. Therefore, the Pflugers contend that the 1965 water reservation is nothing more than an expressed easement in favor of the mineral estate owner who retained the dominant estate. We disagree.

The 1965 deed from the Jordans to the Pettys conveyed land in three different sur-

---

2. The three oil and gas leases were as follows: (1) an oil and gas lease dated March 9, 1984, from W.A. Hickman et al to Sun Exploration and Production Company and recorded in Volume 110, Page 650 of the Deed Records of Nolan County, (2) an oil and gas lease dated March 9, 1984, from W.A. Hickman et al to Sun Explora-

tion and Production Company and recorded in Volume 110, Page 654 of the Deed Records of Nolan County, and (3) an oil and gas lease dated October 12, 1989, from Hickman–Jordan–Halligan Ranch to Sun Operating Limited Partnership and recorded in Volume 151, Page 245 of the Deed Records of Nolan County.

veys: tract one being all of Section No. Sixteen (16), tract two being all of Section No. Seventeen (17), and tract three being all of the West 469 acres of Section No. Ten (10), all in Block Z of the T & P RR. Co. Survey in Nolan County. The water rights described in the 1965 deed were reserved for the development of the oil, gas, and minerals under these three tracts of land which contained approximately 1,755.012 acres.

In the contract before us, the Pflugers agreed to sell to the Clacks only that land contained in tracts two and three above, being in Sections 17 and 10, which contained approximately 1,102.88 acres. Therefore, the fee owner of the mineral estate and water rights could use the water from Sections 17 and 10 for the development of the minerals under Section 16. This right to the use of the water by the fee owner of the minerals is greater than the right to the use of the water granted the dominant mineral estate under a theory of implied easement. The reservation of water rights under the 1965 deed is a cloud on the fee ownership of the surface estate. Therefore, the Clacks' objection to the title was a valid objection. See *Ryan Mortgage Investors v. Fleming–Wood,* 650 S.W.2d 928 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (title is not marketable if clouded by outstanding interest); *Block v. Burch,* 77 S.W.2d 572 (Tex.Civ.App.—Amarillo 1934, writ dism'd) (buyer is not required to accept the title that is defective.)

■ Having determined that, under the contract and commitment, the water reservation was a valid objection to the title to be conveyed, we will now address the Pflugers' second argument that the Clacks' title objections were not permissible, that is, that there was no authorization under the contract by which the Clacks could make an objection to the title. Paragraph 2E of the contract of sale provides that the property to be sold would be subject to the following conditions and restrictions:

**E. Restrictions, Zoning Ordinances or Exceptions:**

Any valid and properly recorded instruments in the records of the County Clerk of Nolan County, Texas. Because the Clacks agreed in the contract to accept a title insurance policy,[3] because the 1965 deed was properly recorded, and because the Pflugers had furnished a title commitment that did not list the 1965 deed as an exception, the Pflugers urge that the Clacks cannot contractually make any title objections. We disagree with this argument.

■ Neither party argues that the contract is ambiguous. See *Exxon Corporation v. West Texas Gathering Company,* 868 S.W.2d 299 (Tex.1993); *White v. Moore,* 760 S.W.2d 242 (Tex.1988). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Forbau v. Aetna Life Insurance Company,* 876 S.W.2d 132 (Tex.1994); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515, 518 (Tex.1968); *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941). To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. (Emphasis added) *Coker v. Coker,* 650 S.W.2d 391 (Tex.1983); *Southland Royalty Company v. Pan American Petroleum Corporation,* 378 S.W.2d 50 (Tex.1964); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corporation,* 361 S.W.2d 193, 196 (Tex.1962); *Citizens*

---

**3.** Paragraph 6A of the contract of sale provides: TITLE: *Seller shall furnish to Buyer at Seller's expense either:*
 A. *Owner's Policy of Title Insurance (the Title Policy) issued by any reputable title in-* *surer in the amount of the Sales Price and dated at or after closing.*

*Nat. Bank in Abilene v. Texas & P. Ry. Co.,* supra at 1006.

Paragraph 14B of the contract of sale provides that: *"If Title Policy is furnished ... If Buyer has objection to any such previously undisclosed exceptions."* (Emphasis added) Paragraph 14C of the contract provides that:

> *In either instance* [referring to the furnishing of either an abstract or title policy] *if title objections are raised by Buyer or Title Company ..., Seller shall have fifteen (15) days from the date such objections are disclosed to cure the same.* (Emphasis added)

To hold that the buyer cannot make a title objection after the commitment has been issued to title defects not covered in the commitment would make the language in Paragraphs 14B and 14C meaningless. To construe this contract in accordance with the Pflugers' position, the seller could force the buyer to purchase a lawsuit against the title company for a defect in the seller's title which was discovered prior to closing. Reading the contract in its entirety, we do not find that this was the intention of the parties.

 Having decided that the objections were valid and permissible under the contract, we will now address the third argument. The Pflugers contend that under the terms of the contract the Clacks failed to timely make their objections to the title.

The original closing date was set for June 19, 1992. The title commitment was first delivered to the Clacks on May 6, 1992. The Clacks first mentioned their objections verbally to Beall Abstract on May 20. On the 22nd, the Clacks again voiced their objections to Beall Abstract. This time, they specifically directed the title company's attention to the reservation in the 1965 deed. On June 5, the Clacks' lawyer made objections to the title in writing to the Pflugers' lawyer.

Paragraph 14 of the contract of sale provides:

> B. *If Title Policy is furnished, the Title Policy shall guarantee Buyer's title to* be as good and indefeasible subject only to (1) restrictive covenants affecting the Property (2) any discrepancies, conflicts or shortages in area or boundary lines, or any encroachment, or any overlapping of improvements (3) taxes for the current and subsequent years and subsequent assessments for prior years due to a change in land usage or ownership (4) existing building and zoning ordinances (5) rights of parties in possession (6) liens created as security for the sale consideration (7) utility easements common to the platted subdivision of which this Property is a part (8) exceptions, reservations, conditions or restrictions set out and described in Paragraph 2 of this contract and (9) any other reservations or exceptions permitted by the terms of this contract. If the Title Policy will be subject to exceptions other than those recited above in items (1) through (8) inclusive, Seller shall deliver to Buyer the Commitment and legible copies of any documents creating exceptions that are not recited in items (1) through (8) above at least five (5) days prior to closing. If Buyer has objection to any such previously undisclosed exceptions, or to any unrecorded easement or adverse condition with respect to the boundaries which are revealed by any survey of the Property, Buyer shall have five (5) days after receipt of such Commitment, copies, and survey to make written objections to Seller. If no Commitment is provided to Buyer at or prior to closing, it will be conclusively presumed that Seller represented at closing that the Title Policy would not be subject to exceptions other than those recited above in items (1) through (8).

The Pflugers urge that the Clacks' objection is governed by Paragraph 14B(8) which incorporates Paragraph 2E, the reference to all recorded instruments, and that the Clacks did not make their written objections within five days of delivery of the title commitment.

First, if the Pflugers are claiming that, for notice purposes, the 1965 water reservation was not a previously undisclosed title defect

because this contingency was covered under Paragraph 14B(8), then this paragraph does not apply. Paragraph 14B applies when the seller makes a previously undisclosed exception or objection to the title and establishes the time when a buyer can accept or reject the additional title condition. The applicable provision is Paragraph 14C which provides:

> C. In either instance [referring to the furnishing of either an abstract or title policy] if title objections are raised by Buyer or Title Company named in Paragraph 6A, Seller shall have fifteen (15) days from the date such objections are disclosed to cure the same, and the Closing Date shall be extended accordingly. If the objections are not timely cured, this contract shall terminate and the Earnest Money shall be refunded to Buyer, unless Buyer elects to waive the unsatisfied objections and complete the purchase.

Second, if the Pflugers are claiming that the 1965 water reservation was a previously undisclosed title defect, then, under Paragraph 14B, the Pflugers did not provide the Clacks with "copies of any documents creating exceptions" or attempt to cure the title objection: a fact that the court found in its findings and the Pflugers do not dispute. We do not find that the trial court erred as a matter of law in its conclusion that the Clacks' title objections were timely made and communicated to the Pflugers.

Under the terms of the contract of sale, the Pflugers agreed to sell the surface estate. The law implies that the seller will furnish good and marketable title. *Lambert v. Taylor Telephone Cooperative,* 276 S.W.2d 929 (Tex.Civ.App.—Eastland 1955, no writ). Marketable title means title that is reasonably free from such doubts as would affect the market value of the estate. *Roberts & Corley v. McFaddin, Weiss & Kyle,* 32 Tex. Civ.App. 47, 74 S.W. 105 (1903). The 1965 water reservation was not listed as an exception to the title to be conveyed in the contract of sale. Also, under the terms of the contract of sale, the Pflugers agreed to furnish an owner's policy of title insurance which would guarantee good and indefeasible title. The title commitment did not list the 1965 water reservation as an exception from its coverage. Consequently, under these facts, the title company could never guarantee good and indefeasible title. See *Tamburine v. Center Savings Association,* 583 S.W.2d 942 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Prendergast v. Southern Title Guaranty Company,* 454 S.W.2d 803 (Tex. Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). Because the Pflugers could not convey good and marketable title or furnish title insurance to guarantee good and indefeasible title, the trial court properly found that the Clacks were entitled to terminate the contract. We overrule Points of Error Nos. 1, 2, 3, 4, 6, and 7.

We will now address the Pflugers' Point of Error No. 5 which complains of the trial court's findings and conclusions that the Clacks were entitled to recover attorney's fees. Because the contract of sale authorized the award of attorney's fees to the prevailing party, because the Clacks were the prevailing party at trial, and because the award of the attorney's fees was consistent with the proof at trial, the fifth point of error is overruled.

The judgment of the trial court is affirmed.

McCLOUD, C.J., Retired, Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

WRIGHT, J., not participating.