NO. 07-03-0016-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



APRIL 7, 2003


______________________________



IN RE OCCIDENTAL PERMIAN LTD.,



 Relator

 _______________________________




ORIGINAL PROCEEDING


_______________________________



Before JOHNSON, C.J. and QUINN and CAMPBELL, JJ.

 Occidental Permian, Ltd., (Occidental) petitioned the court for a writ of mandamus. 
It seeks an order from us directing the Hon. H. Bryan Poff, assigned to the 286th Judicial
District, Hockley County, to "vacate the order of severance issued October 1, 2002." We
deny the petition.

Background


 The dispute involves the severance of Occidental's counterclaim against Bryant Salt
Water Disposal, Inc. (Bryant), James Oney, James Oney d/b/a B & O Enterprises, and
Penny Oney. (1) Bryant and Oney originally sued Occidental, Lobo Well Service, Inc. (Lobo),
and Key Energy Services, Inc. (Key) to recover damages allegedly caused by Lobo
dumping drilling mud into a salt water disposal well operated by Bryant and Oney. 
Dumping the mud into the well allegedly rendered the well inoperative. That is, the mud
somehow plugged the geologic formation and caused the pressure in the well to exceed
that permitted by the Railroad Commission. Therefore, the well was ruined, and Bryant
and Oney purportedly lost their "livelihood."

 In answer to the Oney/Bryant suit, Occidental averred that the damages, if any,
were solely caused by Oney and Bryant. The latter, according to Occidental, ran the well
in a manner which caused excessive pressure to build, irrespective of whatever mud may
have been dumped in it. And, as a result of their own misconduct, the well was lost. 
Having so alleged in its answer to the petition, Occidental then filed a counterclaim against
Oney and Bryant. Through it, damages were sought to recompense the loss of one of its
own wells, CLU #41, located approximately a quarter mile from the disposal well. The
casing collapsed, according to Occidental, due to Oney and Bryant excessively
pressurizing the salt water disposal well, which in turn, overly pressured the underground
strata through which CLU #41 was drilled. The record indicates that this incident (the
collapse of the casing) happened some six weeks before the mud incident occurred. 

 Yet, we cannot continue without mentioning one other claim for relief. It involves
a suit initiated by Perry Heard (Heard) against Oney, Bryant, Occidental, Lobo and Key
for damages he suffered. According to the record before us, Heard owned the salt water
disposal well in question and had permitted Oney to operate it via a surface lease. 
Furthermore, his damages arose when the disposal well was rendered inoperative by Lobo
purportedly dumping mud into it. So, he seeks monetary relief to recompense him. 
However, no one seeks relief against him. And, while Heard initially pursued his claims
via a separate lawsuit, the latter was consolidated with the action of Oney and Bryant at
the behest of Occidental. 

 Given the foregoing background, we see that there were, in effect, three suits under
the umbrella of one cause number. The first was that by Heard against everyone else to
recover for the loss of his saltwater disposal well. The second was that of Oney and
Bryant against Occidental, Lobo and Key to recover for the loss of the same well. And, the
third involved effort by Occidental to recover from Oney and Bryant for the loss of CLU
#41, a separate well. Finally, it was this third suit which the trial court severed from the
proceeding and assigned its own cause number.

Authority


 Applicable rule of procedure states that any claim against a party may be severed
and proceeded with separately. Tex. R. Civ. P. 41. Furthermore, whether to so sever a
claim is a matter lying within the trial court's discretion. Liberty Nat. Fire Ins. Co. v. Akin,
927 S.W.2d 627, 629 (Tex. 1996). Thus, mandamus will not issue unless the decision
constitutes a clear abuse of discretion and leaves the aggrieved party with no adequate
remedy at law. Id. 

 Next, a claim is properly severable if 1) the controversy involves more than one
cause of action, 2) the severed claim is one that would be the proper subject of a lawsuit
if independently asserted, and 3) the severed claim is not so interwoven with the remaining
action that they involve the same facts and issues. Guaranty Fed. Sav. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 658 (Tex. 1990); Lusk v. Puryear, 896 S.W.2d 377, 379
(Tex. App.-Amarillo 1995, orig. proceeding). Finally, the controlling reasons for a
severance are to do justice, avoid prejudice, and further convenience. Id.





Application of Authority


 Occidental initially suggests that the trial court abused its discretion because it
severed a compulsory counterclaim. Assuming arguendo that the counterclaim is
compulsory, we disagree with the suggestion. According to the Texas Supreme Court, "[i]t
is not necessary to determine whether or not the . . . claim [is], in fact, a compulsory
counterclaim, since the trial court ha[s] discretionary power to sever" such a claim under
Rule 41. McGuire v. Commercial Union Ins. Co., 431 S.W.2d 347, 351 (Tex. 1968). That
rule "provides that 'any claim against a party may be severed and proceeded with
separately.'" Id. (emphasis added). So, as long as the trial court abides by Rule 41, it is
not error to sever and proceed separately with any claim, including a compulsory
counterclaim. (2) 

 Next, with regard to the trial court's compliance with Rule 41, we reiterate the
teaching of Guaranty. A claim is severable if 1) the suit involves more than one cause of
action, 2) the severed claim is one that could be prosecuted through a separate lawsuit,
and 3) it is not so interwoven with the remaining action that they involve the "same facts
and issues." Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d at 658
(emphasis supplied). Given that Heard sued Oney, Bryant, Lobo, Key and Occidental, that
Oney and Bryant sued Lobo, Key, and Occidental, and that Occidental sued Oney and
Bryant for damages for various causes of action, it is clear that the proceeding involved
more than one cause of action prior to severance. So, the first element propounded in
Guaranty is met.

 Second, as disclosed in the pleadings attached to the record before us, Heard
decries the act of dumping mud into the salt water disposal well. That is the conduct which
allegedly caused him injury. The same can be said of the claims asserted by Oney and
Bryant. However, Occidental's suit involves damage to a separate well it owned, which
damages were allegedly caused by the manner in which Oney and Bryant operated the
disposal well, irrespective of the mud Lobo purportedly dumped. Simply put, each claim
involves injury to a separate right or interest of the party asserting it and was susceptible
to prosecution through separate lawsuits. So, the second element of Guaranty is met.

 Next, and as previously mentioned, the proceeding consisted of causes asserted
by 1) Heard against everyone, 2) Oney and Bryant against Occidental, Lobo and Key, and
3) Occidental against Oney and Bryant. Furthermore, the claims of Oney, Bryant and
Heard arise from the act of Lobo dumping mud into the disposal well. This occurred some
six weeks after the casing of CLU #41 collapsed purportedly due to the manner in which
Oney and Bryant operated the disposal well. Thus, the operative facts underlying the
injury described in Occidental's counterclaim are not directly related to or the same as
those upon which the claims of Oney, Bryant or Heard are founded. Simply put,
Occidental is not complaining about the effect of Lobo dumping mud into the disposal well. 
Nor does its claim arise from that fact or act. Yet, that is the very fact and misconduct
upon which the claims of Heard, Oney, and Bryant are dependent, and that is the fact from
which arose their claims. Given this, we cannot say that the severed claim is so
interwoven with the remaining action that they involve the same facts and issues. 

 In sum, the Supreme Court in Liberty National and its predecessors set the standard
high in cases involving mandamus. Again, the record must illustrate a clear abuse of
discretion. That is, "the relator must show 'that the trial court could reasonably have
reached only one decision."' Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d at 629-30
(emphasis added). As described above, circumstances appear of record satisfying the
elements specified in Guaranty and Lusk which authorize severance. We cannot say that
claims alleged and the myriad of potential facts and controversies surrounding them gave
rise to but one reasonable decision for the trial court to make. Thus, it did not fail to
comply with guiding rules and principles or abuse of discretion in severing Occidental's
counterclaim. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985) (stating that a court abuses its discretion when it acts without reference to any
guiding rule or principle or acts arbitrarily or unreasonably). 

 The petition for writ of mandamus is denied.


 Brian Quinn

 Justice
1. For simplification, James Oney, Penny Oney, and James Oney d/b/a B & O Enterprises are
collectively referred to as Oney.
2. Occidental cites various cases purporting to hold that a trial court cannot sever and proceed
separately with a compulsory counterclaim. See e.g., Rucker v. Bank One Texas, N.A., 36 S.W.3d 649, 651
(Tex. App.-Waco 2000, pet. denied); Goins v. League Bank and Trust, 857 S.W.2d 628, 630 (Tex.
App.-Houston [1st Dist.] 1993, no writ). Each, however, is that of an intermediate court of appeal. And, while
they may be informative, we are nonetheless bound to follow the dictate of the Texas Supreme Court. 
Lubbock County v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (requiring intermediate
appellate courts to follow Supreme Court precedent and leave to the Supreme Court the matter of abrogating
or modifying its own precedent). So, since McGuire was rendered by the Supreme Court, it controls.

 

 Moreover, the test applied when determining the validity of a severance differs from that applicable
to assessing whether a counterclaim is compulsory. Concerning the latter, the court must decide, among
other things, if the claims arise from the same transaction or occurrence. Rucker v. Bank One Texas, N.A.,
36 S.W.3d 649, 651-52 (Tex. App.-Waco 2000, pet. denied). And, they do if "some of the facts [are]
relevant to both claims." Community State Bank v. NSW Inv., L.L.C., 38 S.W.3d 256, 258 (Tex. App.
-Texarkana 2001, pet. dism'd w.o.j.) (emphasis added). However, severance is proper if, among other
things, the "severed actions are not so interwoven with the other claims that they involve the same facts and
issues." Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996) (emphasis added). From this,
one can see that the propriety of a severance is dependent upon whether the facts and issues underlying
each claim are identical. See Saxer v. Nash Phillips-Corpus Co., 678 S.W.2d 736, 739-40 (Tex. App.-Tyler
1984, writ ref'd n.r.e.) (holding that the trial court did not abuse its discretion in severing the claims because
the facts and circumstances necessary to prove one claim were not "identical" to those necessary to prove
the other). On the other hand, the facts involved in each claim need not be identical to satisfy the
compulsory counterclaim test, but only relevant to each other. Simply put, the test used in determining
whether a matter should be joined as a compulsory counterclaim is much more liberal in scope than that
used to assess the validity of a severance. 



ed effective assistance of
counsel in violation of the Sixth and Fourteenth amendments to the United States
Constitution by his trial counsel's failure to (1) investigate appellant's mental health history,
and (2) request an order from the trial court ordering appellant to submit to a competency
examination in a mental health facility. The State responds that appellant's claim of
ineffective assistance of counsel is not supported by the record.

 In determining whether counsel's representation was so inadequate as to violate
a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged
test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). The burden is on
appellant to prove by a preponderance of the evidence that counsel was ineffective. See
McFarland v. State, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996). The defendant must first
prove that counsel's performance was deficient, i.e., that counsel's assistance fell below
an objective standard of reasonableness. Id. If appellant has demonstrated deficient
assistance of counsel, it is then necessary that appellant affirmatively prove prejudice as
a result of the deficient assistance. Id. In proving prejudice, appellant must prove a
reasonable probability that but for counsel's errors, the result of the proceeding would
have been different. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Hernandez, 726 S.W.2d at 55. 

 Any allegation of ineffective assistance of counsel must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
McFarland, 928 S.W.2d at 500. Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Id. Absent both
showings an appellate court cannot conclude the conviction resulted from a breakdown
in the adversarial process that renders the result unreliable. Ex parte Menchaca, 854
S.W.2d 128, 131 (Tex.Crim.App. 1993).A. Duty to Investigate

 An attorney representing a defendant must acquaint himself or herself not only with
the law but also the facts of the case before the attorney can render reasonably effective
assistance of counsel. Ex parte Pool, 738 S.W.2d 285, 286 (Tex.Crim.App. 1987); Butler
v. State, 716 S.W.2d 48, 54 (Tex.Crim.App.1986). We will not reverse a conviction unless
the consequence of the failure to investigate "is that the only viable defense available to
the accused is not advanced...[and] there is a reasonable probability that, but for counsel's
[failure to advance the defense], the result of the proceeding would have been different." 
McFarland, 928 S.W.2d at 501. 

 Appellant asserts that his trial counsel was ineffective for failing to obtain medical
records relating to appellant's mental health history and present those records to Dr. Davis
and to the trial court for purposes of evaluating appellant's competency to stand trial. In
support of his argument, appellant refers us to a portion of appellant's guilty plea. During
the process of pleading guilty, a colloquy occurred between the trial judge and appellant
in which appellant stated that he had been previously treated by a doctor for a mental
condition. Appellant related to the judge that the treatment had been related to a sex
offense committed by appellant. Appellant denied ever being prescribed any medications
during this treatment and also denied ever being committed to a mental institution. 
Appellant opined that he was mentally competent to stand trial.

 The record is insufficient to merit a conclusion that appellant's trial counsel failed
to adequately investigate appellant's case and in so failing, failed to discover any
documents or records relevant to determining appellant's incompetency to stand trial. The
fact that a defendant has been treated by a psychiatrist does not constitute evidence of
that defendant's present incompetency to stand trial. Leyva v. State, 552 S.W.2d 158, 161
(Tex.Crim.App. 1977); Gilbert v. State, 852 S.W.2d 623, 626-27 (Tex.App. - Amarillo 1993,
no pet.). Assuming, arguendo, that documents or records existed relating to appellant's
prior treatment by a doctor for a mental illness, there is no showing that appellant's trial
counsel was either unaware of the existence of such records, failed to obtain such records,
or that the records contained any information relevant to the issue of appellant's
competency to stand trial. Dr. Davis testified that he had been supplied with records and
other background information by defense counsel when he was appointed to examine
appellant in connection with appellant's pretrial motion. The record does not reflect what
Dr. Davis was furnished. Furthermore, because the record does not affirmatively
demonstrate that appellant's trial counsel failed to obtain or produce for the court
documents or records which existed and which would have been relevant to the issue of
appellant's competency at the time of trial, we will not speculate and conclude that trial
counsel was ineffective. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.
1994).

B. Failure to seek appellant's 

competency examination in a mental health facility


 Appellant further argues that his trial counsel was ineffective for failing to request
an order that appellant submit to a mental competency examination in a mental health
facility pursuant to Tex. Crim. Proc. Code Ann. art. 42.02, § 3(b) (Vernon Supp. 2004).

 Unless there is a showing that a pre-trial motion had merit and that a ruling on the
motion would have changed the outcome of the case, counsel will not be ineffective for
failing to assert the motion. See Roberson v. State, 852 S.W.2d 508, 510-12
(Tex.Crim.App. 1993). 

 Appellant has not demonstrated that the result of the proceedings would have been
different if his trial counsel had urged the court to order appellant to submit to an
examination in a mental health facility. Appellant has not demonstrated, for example, that
he would have cooperated with such an examination. To the contrary, the only evidence
in the record on the subject is his pretrial hearing testimony that he would have refused
examination in a mental health facility even if the trial court ordered one. Neither has
appellant demonstrated that the result of a competency examination would have changed
the outcome of the case. See Jackson, 877 S.W.2d at 771; Roberson, 852 S.W.2d at 510-12. 

 Appellant's second issue is overruled. 

CONCLUSION

 Having overruled each of appellant's issues, we affirm the judgment of the trial
court. 

 Phil Johnson

 Chief Justice



Publish.