COMMUNITY STATE
BANK, Appellant,

v.

NSW INVESTMENTS, L.L.C., Wes
White, Russell J. Collier, Eric McCa-
thran, and Randal Root, Appellees.

No. 06–00–00087–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 18, 2001.

Decided Jan. 30, 2001.

Charles Clark, Mark S. Logsdon, Clark, Lea, Rutter & Logsdon, Tyler, for appellant.

W.F. Palmer, Thomas W. Key, Palmer Law Firm, Inc., Marshall, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Community State Bank brings this accelerated appeal of a Harrison County temporary injunction enjoining Community State Bank from prosecuting lawsuits filed in Harris County for the collection of promissory notes executed by NSW Investments, L.L.C., et al.

Community State Bank contends that the trial court erred by granting a temporary injunction on the erroneous ground that its claims filed in Harris County are compulsory counterclaims to the suit brought in Harrison County by NSW Investments, L.L.C., et al. Community State Bank contends its causes of action in Harris County are not compulsory counterclaims because (1) Community State Bank's Harris County claims do not arise out of the same transaction or occurrence that is the subject matter of the Harrison County suit; and (2) Community State Bank does not sue in Harris County in the same capacity in which it is sued in Harrison County.

## I. Factual Background

NSW Investments, L.L.C., Wes White, Russell J. Collier, Eric McCathran, and Randal D. Root (collectively referred to herein as "NSW") filed suit in Harrison County against R. Stephen Cavender, president of East Texas National Bank (ETNB), Community State Bank (CSB), and CSB's president, Thomas M. Woodruff. The petition alleges that ETNB and CSB have a history of participating in each other's nonperforming loans for the purpose of deceiving federal banking regulators. In its suit, NSW alleges that CSB, Cavender, and Woodruff conspired in a scheme to fraudulently induce NSW to partially guarantee a $3 million loan that ETNB desperately needed to raise capital required to meet federal banking regulation requirements. To ensure approval of the $3 million loan to ETNB, Cavender is alleged to have fraudulently induced the plaintiffs to purchase the common stock of First Marshall Corporation (the holding company that controlled ETNB), to execute guaranties of the $3 million loan to ETNB, and to execute the promissory notes payable to CSB that provided the funding for the First Marshall Corporation stock purchase.

CSB and Woodruff are alleged to have participated in the conspiracy by providing 100% financing for the purchase of the First Marshall Corporation stock (hence NSW's promissory notes to CSB) and by arranging for a pledge of common stock in Fresh 'N Lite, Inc. as additional collateral to secure NSW's loans from CSB. This pledge of Fresh 'N Lite, Inc. stock arranged by CSB was allegedly made without the consent or knowledge of NSW and apparently without any legitimate business purpose on the part of the pledge maker.[1]

---

1. CSB and ETNB are both alleged to be heavily committed to Fresh 'N Lite, Inc., Curtis Swanson (its controlling stockholder), and related entities and shareholders.

Despite obtaining the $3 million loan, ETNB ultimately was declared insolvent and put into receivership. First Marshall Corporation stock was thereby rendered worthless, and NSW was left liable for the promissory notes signed to CSB for the purchase price and the partial guaranties of the $3 million loan to ETNB.

Subsequent to the filing of NSW's suit in Harrison County alleging fraudulent inducement to participate in the transaction and conspiracy, CSB filed suit against each plaintiff individually in Harris County for enforcement of the promissory notes allegedly executed in furtherance of the conspiracy. NSW Investments, L.L.C. filed a plea in abatement in the Harris County cause on the ground that the claim asserted by CSB in Harris County is a compulsory counterclaim to the action brought by NSW in Harrison County. The plea in abatement was overruled on the grounds that CSB was not sued in Harrison County in the same capacity as it sued NSW Investments, L.L.C. in Harris County and that there was not a complete identity of parties and issues in both suits.

Thereafter, the Harrison County court issued a temporary injunction enjoining CSB from pursuing litigation in any other court that arises out of the same transaction or occurrence as the causes of action asserted by NSW in Harrison County. This injunction has effectively stayed proceedings in the Harris County suits.

## II. Analysis

■ Because this is an interlocutory appeal of an order issuing a temporary injunction, the merits are not under consideration, and our review is limited to whether the trial court abused its discretion. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). When reviewing an order granting a temporary injunction, we draw all legitimate inferences in favor of the trial court's judgment. *City of San Antonio v. Rankin,* 905 S.W.2d 427, 430 (Tex. App.—San Antonio 1995, no writ). We affirm the order on any legal theory supported by the evidence. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977), *overruled on other grounds, Cherne Indust., Inc. v. Magallanes,* 763 S.W.2d 768, 770 (Tex. 1989). CSB attacks the trial court's finding that its claims in Harris County are compulsory counterclaims to NSW's suit in Harrison County, the alleged erroneous ground on which the temporary injunction is based.

■ A counterclaim is compulsory if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the action is mature and owned by the pleader at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claims; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. TEX.R.CIV.P. 97(a); *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex.1988). CSB contends that elements (4) and (5) are unsatisfied in this case.

■■ CSB contends its claims in Harris County do not arise out of the transaction or occurrence that is the subject matter of NSW's suit in Harrison County. To determine what constitutes a transaction, we employ the logical relationship test, which asks whether the essential facts on which the claims are based are significantly and logically relevant to both claims. *Freeman v. Cherokee Water Co.,* 11 S.W.3d 480, 483 (Tex.App.—Texarkana 2000, pet. denied). Under this test, a transaction is flexible, comprehending a series of many occurrences logically related to one another. *Klein v. Dooley,* 933 S.W.2d 255, 259 (Tex.App.—Houston [14th Dist.] 1996), *overruled on other grounds,* 949 S.W.2d 307 (Tex.1997). To arise from the same transaction, at least some of the facts must be relevant to both claims. *Id.*

■ As a preliminary matter, CSB contends its actions prior to the execution of

the promissory notes cannot constitute any part of the same transaction because CSB owed NSW no fiduciary duty. This argument has no merit. NSW's claim of conspiracy does not depend on any putative breach of fiduciary duty. NSW's claim against CSB is based on CSB's alleged participation in a conspiracy to induce NSW to execute guaranties on the $3 million loan to ETNB. Through liberal loan terms to underwrite a stock purchase and surreptitious procuration of additional collateral to secure the loans, CSB is alleged to have facilitated the purchase of First Marshall Corporation stock by NSW, who was in turn required to guarantee the $3 million loan to ETNB. This resulted in the signature of the promissory notes payable to CSB, which was but one part of the fraudulent scheme in which CSB is alleged to have participated.

CSB relies on *Goins v. League Bank & Trust*, 857 S.W.2d 628, 630 (Tex.App.— Houston [1st Dist.] 1993, no writ), in support of its contention that its claims in Harris County do not arise out of the same transaction or occurrence that is the subject matter of NSW's suit in Harrison County. The court in *Goins* found that an administratrix's counterclaim alleging tortious interference with the prospective sale of property was not a compulsory counterclaim to a suit to enforce a note on the property in question. *Id.* The *Goins* opinion makes no reference to allegations of an overall scheme connecting the making of the note for the purchase of the property with the later tortious interference with the sale of the property. The court in *Goins* noted that the administratrix did not dispute the validity of the bank's note, granted judgment for the creditor, and severed the cause from her tort suit.

*Goins* is distinguishable from the case at bar, in that NSW here alleges the signature of the promissory notes was wrongfully procured *as part of a conspiracy* to perpetrate fraud in the inducement, which was participated in by the notes' holder, CSB.

Other cases provide more analogous situations on which we may rely. In *Whites Stores*, the court held that a note holder's suit to enforce a guaranty agreement arose out of the same transaction or occurrence as an earlier-filed suit wherein the guarantors alleged fraudulent inducement on the part of the note holder in the formation of the corporation whose debts had been guaranteed. *Whites Stores, Inc. v. Nowaski*, 760 S.W.2d 53, 55 (Tex.App.—Fort Worth 1988, no writ). The court found the allegations of fraudulent inducement related not only to the formation of the corporation, but also to transactions accomplished in connection with such formation, including the execution of the guaranty agreement that the note holder sought to enforce. *Id.*

In a similar vein, another court of appeals found a guarantor's claims for fraudulent inducement to enter into a transaction and to execute a guaranty agreement were compulsory counterclaims to the note holder's suit to enforce the guaranty. *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex.App.—Amarillo 1990, writ denied). Although the order in which the causes of action in *Lesbrookton* were filed is reversed from that in the present case, the decision is nonetheless instructive. As in *Whites Stores*, the essential holding is that allegations of fraudulent inducement in connection with a larger transaction and instruments executed concomitantly thereto are part of the same transaction or occurrence. *Id.*

Similarly, NSW's allegations of fraudulent inducement and conspiracy are significantly and logically related to not only the ultimate object of the conspiracy, signature of the guaranties, but also the intermediate step of executing promissory notes to CSB for the purchase of First Marshall Corporation stock. Following the reasoning of the above-cited cases, we find that the trial court did not abuse its discretion in determining that the facts underlying CSB's claims for enforcement of promissory notes arise out of the same

transaction or occurrence that is the subject matter of NSW's suit in Harrison County.

CSB also contends its causes of action in Harris County are not compulsory counterclaims to NSW's suit in Harrison County on the ground that CSB's suits in Harris County are not brought against NSW Investments, L.L.C. in the same capacity in which NSW sues CSB in Harrison County. CSB contends that because it was sued by NSW in Harrison County as a tortfeasor and it sued NSW Investments, L.L.C. in Harris County as a secured creditor, it does not appear in the same capacity in both suits. CSB cites *Goins* in support of its position. *Goins*, 857 S.W.2d at 630. In *Goins*, the court held that Goins's counterclaim against the bank as tortfeasor was not compulsory in the bank's suit against Goins brought in its capacity as secured creditor, even though both suits arose out of the same transaction. *Id.* The court reasoned that the bank, appearing in one suit as a tortfeasor and in the other as a secured creditor, did not appear in both suits in the same capacity. *Id.*

Contrary to *Goins*, the Texas Supreme Court and several appellate courts have analyzed the term "capacity" as used in the context of the compulsory counterclaim rule as referring to the distinction between individual and representative capacities. A survey of relevant jurisprudence reveals that portion of *Goins* relied upon by CSB to be an aberration with no basis in law. *See Wyatt*, 760 S.W.2d at 247 (plumbing company's claim against house builder for breach of contract was compulsory counterclaim in house builder's suit against plumbing company arising out of same transaction alleging fraud and Deceptive Trade Practices Act violations); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1066 (1926) (bank's action to recover on promissory note was compulsory counterclaim in borrower's suit arising out of same transaction alleging equitable grounds for cancellation of the note); *Lesbrookton, Inc.*, 796 S.W.2d at 284 (trustee's suit in his representative capacity for fraudulent inducement was not compulsory counterclaim in suit against trustee in his individual capacity for enforcement of a guaranty arising out of the same transaction); *Stevenson v. Reese*, 593 S.W.2d 828, 830 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (trustee's suit in his individual capacity for trespass to try title action was not compulsory counterclaim in suit against trustee in his representative capacity alleging fraud, conspiracy, breach of contract, and Deceptive Trade Practices Act violations arising out of the same transaction); *Robertson v. Estate of Melton*, 306 S.W.2d 811, 813 (Tex.Civ.App.—Beaumont 1957, writ ref'd) (tort claim against widow in her representative capacity as administratrix of deceased's estate was not compulsory counterclaim in tort suit arising out the same transaction brought by widow in her individual capacity). None of the parties here have sued others in a representative capacity. Therefore, consistent with these cases, we find that the trial court did not abuse its discretion in determining the same capacity requirement of the compulsory counterclaim rule has been satisfied.

We affirm.