NO. 07-03-0016-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 7, 2003

_____

IN RE OCCIDENTAL PERMIAN LTD.,

Relator

_____

***ORIGINAL PROCEEDING***

_____

Before JOHNSON, C.J. and QUINN and CAMPBELL, JJ.

Occidental Permian, Ltd., (Occidental) petitioned the court for a writ of mandamus. It seeks an order from us directing the Hon. H. Bryan Poff, assigned to the 286th Judicial District, Hockley County, to "vacate the order of severance issued October 1, 2002." We deny the petition.

***Background***

The dispute involves the severance of Occidental's counterclaim against Bryant Salt Water Disposal, Inc. (Bryant), James Oney, James Oney d/b/a B & O Enterprises, and Penny Oney.[1] Bryant and Oney originally sued Occidental, Lobo Well Service, Inc. (Lobo), and Key Energy Services, Inc. (Key) to recover damages allegedly caused by Lobo dumping drilling mud into a salt water disposal well operated by Bryant and Oney.

---

[1] For simplification, James Oney, Penny Oney, and James Oney d/b/a B & O Enterprises are collectively referred to as Oney.

Dumping the mud into the well allegedly rendered the well inoperative. That is, the mud somehow plugged the geologic formation and caused the pressure in the well to exceed that permitted by the Railroad Commission. Therefore, the well was ruined, and Bryant and Oney purportedly lost their "livelihood."

In answer to the Oney/Bryant suit, Occidental averred that the damages, if any, were solely caused by Oney and Bryant. The latter, according to Occidental, ran the well in a manner which caused excessive pressure to build, irrespective of whatever mud may have been dumped in it. And, as a result of their own misconduct, the well was lost. Having so alleged in its answer to the petition, Occidental then filed a counterclaim against Oney and Bryant. Through it, damages were sought to recompense the loss of one of its own wells, CLU #41, located approximately a quarter mile from the disposal well. The casing collapsed, according to Occidental, due to Oney and Bryant excessively pressurizing the salt water disposal well, which in turn, overly pressured the underground strata through which CLU #41 was drilled. The record indicates that this incident (the collapse of the casing) happened some six weeks before the mud incident occurred.

Yet, we cannot continue without mentioning one other claim for relief. It involves a suit initiated by Perry Heard (Heard) against Oney, Bryant, Occidental, Lobo and Key for damages he suffered. According to the record before us, Heard owned the salt water disposal well in question and had permitted Oney to operate it via a surface lease. Furthermore, his damages arose when the disposal well was rendered inoperative by Lobo purportedly dumping mud into it. So, he seeks monetary relief to recompense him. However, no one seeks relief against him. And, while Heard initially pursued his claims

2

via a separate lawsuit, the latter was consolidated with the action of Oney and Bryant at the behest of Occidental.

Given the foregoing background, we see that there were, in effect, three suits under the umbrella of one cause number. The first was that by Heard against everyone else to recover for the loss of his saltwater disposal well. The second was that of Oney and Bryant against Occidental, Lobo and Key to recover for the loss of the same well. And, the third involved effort by Occidental to recover from Oney and Bryant for the loss of CLU #41, a separate well. Finally, it was this third suit which the trial court severed from the proceeding and assigned its own cause number.

### *Authority*

Applicable rule of procedure states that any claim against a party may be severed and proceeded with separately. TEX. R. CIV. P. 41. Furthermore, whether to so sever a claim is a matter lying within the trial court's discretion. *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Thus, mandamus will not issue unless the decision constitutes a clear abuse of discretion and leaves the aggrieved party with no adequate remedy at law. *Id.*

Next, a claim is properly severable if 1) the controversy involves more than one cause of action, 2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and 3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex. 1990); *Lusk v. Puryear*, 896 S.W.2d 377, 379

3

(Tex. App.–Amarillo 1995, orig. proceeding). Finally, the controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

### *Application of Authority*

Occidental initially suggests that the trial court abused its discretion because it severed a compulsory counterclaim. Assuming *arguendo* that the counterclaim is compulsory, we disagree with the suggestion. According to the Texas Supreme Court, "[i]t is not necessary to determine whether or not the . . . claim [is], in fact, a compulsory counterclaim, since the trial court ha[s] discretionary power to sever" such a claim under Rule 41. *McGuire v. Commercial Union Ins. Co.*, 431 S.W.2d 347, 351 (Tex. 1968). That rule "provides that '*any* claim against a party may be severed and proceeded with separately.'" *Id.* (emphasis added). So, as long as the trial court abides by Rule 41, it is not error to sever and proceed separately with any claim, including a compulsory counterclaim.[2]

---

[2]Occidental cites various cases purporting to hold that a trial court cannot sever and proceed separately with a compulsory counterclaim. *See e.g., Rucker v. Bank One Texas, N.A.,* 36 S.W.3d 649, 651 (Tex. App.–Waco 2000, pet. denied); *Goins v. League Bank and Trust*, 857 S.W.2d 628, 630 (Tex. App.–Houston [1st Dist.] 1993, no writ). Each, however, is that of an intermediate court of appeal. And, while they may be informative, we are nonetheless bound to follow the dictate of the Texas Supreme Court. *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (requiring intermediate appellate courts to follow Supreme Court precedent and leave to the Supreme Court the matter of abrogating or modifying its own precedent). So, since *McGuire* was rendered by the Supreme Court, it controls.

Moreover, the test applied when determining the validity of a severance differs from that applicable to assessing whether a counterclaim is compulsory. Concerning the latter, the court must decide, among other things, if the claims arise from the same transaction or occurrence. *Rucker v. Bank One Texas, N.A.*, 36 S.W.3d 649, 651-52 (Tex. App.–Waco 2000, pet. denied). And, they do if "*some* of the facts [are] *relevant* to both claims." *Community State Bank v. NSW Inv., L.L.C.*, 38 S.W.3d 256, 258 (Tex. App. –Texarkana 2001, pet. dism'd w.o.j.) (emphasis added). However, severance is proper if, among other things, the "severed actions are not so interwoven with the other claims that they involve the *same* facts and issues." *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (emphasis added). From this,

Next, with regard to the trial court's compliance with Rule 41, we reiterate the teaching of *Guaranty*. A claim is severable if 1) the suit involves more than one cause of action, 2) the severed claim is one that could be prosecuted through a separate lawsuit, and 3) it is not so interwoven with the remaining action that they involve the "*same* facts and issues." *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d at 658 (emphasis supplied). Given that Heard sued Oney, Bryant, Lobo, Key and Occidental, that Oney and Bryant sued Lobo, Key, and Occidental, and that Occidental sued Oney and Bryant for damages for various causes of action, it is clear that the proceeding involved more than one cause of action prior to severance. So, the first element propounded in *Guaranty* is met.

Second, as disclosed in the pleadings attached to the record before us, Heard decries the act of dumping mud into the salt water disposal well. That is the conduct which allegedly caused him injury. The same can be said of the claims asserted by Oney and Bryant. However, Occidental's suit involves damage to a separate well it owned, which damages were allegedly caused by the manner in which Oney and Bryant operated the disposal well, irrespective of the mud Lobo purportedly dumped. Simply put, each claim involves injury to a separate right or interest of the party asserting it and was susceptible to prosecution through separate lawsuits. So, the second element of *Guaranty* is met.

---

one can see that the propriety of a severance is dependent upon whether the facts and issues underlying each claim are identical. *See Saxer v. Nash Phillips-Corpus Co.*, 678 S.W.2d 736, 739-40 (Tex. App.–Tyler 1984, writ ref'd n.r.e.) (holding that the trial court did not abuse its discretion in severing the claims because the facts and circumstances necessary to prove one claim were not "identical" to those necessary to prove the other). On the other hand, the facts involved in each claim need not be identical to satisfy the compulsory counterclaim test, but only relevant to each other. Simply put, the test used in determining whether a matter should be joined as a compulsory counterclaim is much more liberal in scope than that used to assess the validity of a severance.

Next, and as previously mentioned, the proceeding consisted of causes asserted by 1) Heard against everyone, 2) Oney and Bryant against Occidental, Lobo and Key, and 3) Occidental against Oney and Bryant. Furthermore, the claims of Oney, Bryant and Heard arise from the act of Lobo dumping mud into the disposal well. This occurred some six weeks *after* the casing of CLU #41 collapsed purportedly due to the manner in which Oney and Bryant operated the disposal well. Thus, the operative facts underlying the injury described in Occidental's counterclaim are not directly related to or the same as those upon which the claims of Oney, Bryant or Heard are founded. Simply put, Occidental is not complaining about the effect of Lobo dumping mud into the disposal well. Nor does its claim arise from that fact or act. Yet, that is the very fact and misconduct upon which the claims of Heard, Oney, and Bryant are dependent, and that is the fact from which arose their claims. Given this, we cannot say that the severed claim is so interwoven with the remaining action that they involve the same facts and issues.

In sum, the Supreme Court in *Liberty National* and its predecessors set the standard high in cases involving mandamus. Again, the record must illustrate a clear abuse of discretion. That is, "the relator must show 'that the trial court could reasonably have reached *only one* decision.'" *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d at 629-30 (emphasis added). As described above, circumstances appear of record satisfying the elements specified in *Guaranty* and *Lusk* which authorize severance. We cannot say that claims alleged and the myriad of potential facts and controversies surrounding them gave rise to but one reasonable decision for the trial court to make. Thus, it did not fail to comply with guiding rules and principles or abuse of discretion in severing Occidental's

6

counterclaim. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985) (stating that a court abuses its discretion when it acts without reference to any guiding rule or principle or acts arbitrarily or unreasonably).

The petition for writ of mandamus is denied.


Brian Quinn
Justice