# NO. 12-07-00260-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KEITH WELLS, ANDRIA (MEDLEY) STEWART, BLANCHE PHILLIPS AND CARRIE STERLING, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *CLAUDE DOTSON, JR. AND WIFE, FAYE DOTSON, APPELLEES* | § | *CHEROKEE COUNTY, TEXAS* |

### *OPINION*

Keith Wells, Andria (Medley) Stewart, Blanche Phillips, and Carrie Sterling (collectively "Appellants") appeal the trial court's summary judgment entered in favor of Appellees, Claude Dotson, Jr. and Faye Dotson. In one issue, Appellants contend that the trial court erred in granting summary judgment. We affirm in part, reverse and render in part, reverse and remand in part, and dismiss for want of jurisdiction in part.

### BACKGROUND

Claude Dotson, Jr. ("Dotson") befriended Dolphus and Mildred Snow, an elderly couple. Dolphus suffered a stroke, and Mildred thereafter relied on Dotson's assistance in the upkeep of the couple's rural land. Dolphus later died leaving Mildred, who was not financially sophisticated and did not know how to care for the property. Mildred later suffered a series of strokes.

Subsequently, on December 10, 1993, Mildred entered into a contract with Dotson entitled "Lease with Options to Purchase." Pursuant to the terms of the contract, Dotson leased Mildred's

land, which comprised between two hundred eight and three hundred twenty acres, for $2,500.00 per year.  The contract further provided Dotson a twenty year option to purchase the property with all lease payments serving as credits toward the final purchase price.  Additionally, one tract of land was to be transferred to Dotson on November 30, 2003 for no additional consideration other than the lease payments already made through January 1, 2003.

Mildred died on April 30, 2005.  Harold Lewis was appointed as executor of Mildred's estate.  On September 22, 2005, Appellees sent a letter to Lewis declaring their intention to exercise their option to purchase the remaining three tracts of land pursuant to the contract between Dotson and Mildred.[1]  Appellants thereafter notified Lewis that they would not sign a deed conveying title to the land to Dotson and threatened to sue Lewis if he signed the deed.

On October 13, 2005, Appellees filed suit seeking specific performance of the option provision of the contract.  Appellees' petition alleged two avenues by which they were entitled to seek specific performance—breach of contract and Texas Probate Code, section 27.  Appellants answered and later filed counterclaims asserting breach of fiduciary duty, breach of contract, fraud, fraud in the inducement, statutory fraud, and unjust enrichment.  On December 21, 2006, Appellees filed their First Amended Motion for Summary Judgment.  By their motion, Appellees contended they were entitled to specific performance solely by virtue of their Section 27 claim.  Appellees also contended that Appellants' counterclaims were barred by the applicable statute of limitations, laches, waiver, and estoppel.  Appellants filed a response to Appellees' motion on January 26, 2007.  The trial court granted Appellees' First Amended Motion for Summary Judgment on February 14, 2007.  This appeal followed.

### TEXAS PROBATE CODE, SECTION 27

As part of their sole issue on appeal, Appellants argue that the trial court erred in granting summary judgment in Appellees' favor because Appellees failed to demonstrate as a matter of law that they were entitled to specific performance.  Appellees conceded at oral argument that the sole avenue by which they sought specific performance in their motion for summary judgment was Texas

---

[1] Dotson had exercised his option to purchase one tract of land prior to Mildred's death.

2

Probate Code, section 27. Section 27 provides, in pertinent part, as follows:

> When any person shall sell property and enter into bond or other written agreement to make title thereto, and shall depart this life without having made such title, the owner of such bond or written agreement or his legal representatives, may file a complaint in writing in the court of the county where the letters testamentary or of administration on the estate of the deceased obligor were granted, and cause the personal representative of such estate to be cited to appear at a date stated in the citation and show cause why specific performance of such bond or written agreement should not be decreed. After the service of the citation, the court shall hear such complaint and the evidence thereon, and, if satisfied from the proof that such bond or written agreement was legally executed by the testator or intestate, and that the complainant has a right to demand specific performance thereof, a decree shall be made ordering the personal representative to make title to the property, according to the tenor of the obligation, fully describing the property in such decree.

TEX. PROB. CODE ANN. § 27 (Vernon 2003). The authority conferred on the probate court authorizing it to decree specific performance of an agreement by the decedent to convey realty is special and limited and is to be strictly construed. *See Jones v. Taylor*, 7 Tex. 240, 240 (1851).

An option is a privilege or right that the owner of property gives another to buy certain property at a fixed price within a certain period. *See Casa El Sol-Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 717 n.9 (Tex. App.–Houston [14th Dist.] 1996, writ dism'd by agr.). An option contract has two components: (1) an underlying contract that is not binding until accepted and (2) a covenant to hold open to the optionee the opportunity to accept. *Id.* Thus, the option is a mere offer that binds the optionee to nothing and that the optionee may or may not accept at its election. *See W. Fed. Sav. & Loan Ass'n v. Atkinson Fin. Corp.*, 747 S.W.2d 456, 460 (Tex. App.–Fort Worth 1988, no writ); *see also Chambers County v. TSP Development, Ltd.*, 63 S.W. 3d 835, 838 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). It is fundamental that the granting of an option constitutes neither a sale of the property nor an agreement to sell. *See Struller v. McGree*, 374 S.W.2d 256, 258 (Tex. Civ. App.–San Antonio 1963, writ ref'd n.r.e.). Rather, an option is, in a sense, a mere offer, yet it cannot be revoked or withdrawn when it is supported by sufficient consideration. *See Northside Lumber & Bldg. Co. v. Neal*, 23 S.W.2d 858, 859 (Tex. Civ. App.–Fort Worth 1929, no writ).

In the case at hand, the sole avenue by which Appellees sought specific performance in their

motion for summary judgment was Texas Probate Code, section 27.[2] However, Section 27 is limited to circumstances in which a person has sold property or has entered into a bond or other written agreement to make title to that property and dies without having conveyed title. *See* TEX. PROB. CODE ANN. § 27. Since Appellees, by their motion for summary judgment, sought specific performance of Dotson's option agreement with Mildred, and since the granting of an option does not constitute a sale of property or an agreement to sell, *see **Struller***, 374 S.W.2d at 258, it follows that Appellees are not entitled to seek specific performance by virtue of Section 27. Therefore, we hold that the trial court's grant of summary judgment on such grounds was erroneous. To the extent that Appellants' sole issue relates to the trial court's grant of summary judgment based on Section 27, it is sustained.

## STATUTE OF LIMITATIONS

As part of their sole issue, Appellants also argue that the trial court erred in granting summary judgment in Appellees' favor because Appellees failed to demonstrate as a matter of law that Appellants' counterclaims were barred by the affirmative defense of limitations. Appellants raised the following counterclaims: breach of fiduciary duty; breach of contract; fraud; fraud in the inducement; statutory fraud; and unjust enrichment. Appellants do not argue that they filed their counterclaims within the respective period of limitations from the time each of their counterclaims accrued. Rather, Appellants contend that their counterclaims are not time barred pursuant to Texas Civil Practice and Remedies Code, section 16.069. Section 16.069 states as follows:

> (a)     If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b)     The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

---

[2] Summary judgment cannot be sustained on a ground not specifically set forth in the motion. ***McConnell v. Southside Ind. Sch. Dist.***, 858 S.W.2d 337, 339 (Tex. 1993).

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (Vernon 1997). It is undisputed that Appellants filed their counterclaims within the thirty day window from the filing deadline for their answer. Thus, we consider whether Appellants' counterclaims each arise out of the same transaction or occurrence that is the basis of Appellees' action.

The intention of Section 16.069 is to prevent a plaintiff from waiting until the adversary's valid claim arising from the same transaction was barred by limitations before asserting his own claim. *See Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88–89 (Tex. 1977). To determine what constitutes a "transaction," we employ the logical relationship test, which asks whether the essential facts on which the claims are based are significantly and logically relevant to both claims. *Cmty. State Bank v. NSW Inv., L.L.C.*, 38 S.W.3d 256, 258 (Tex. App.–Texarkana 2001, pet. dism'd w.o.j.) (considering the word "transaction" in determining whether a counterclaim is compulsory). Under this test, a transaction is flexible, comprehending a series of many occurrences logically related to one another. *Id.* (citing *Klein v. Dooley*, 933 S.W.2d 255, 259 (Tex. App.–Houston [14th Dist.] 1996), *rev'd on other grounds,* 949 S.W.2d 307 (Tex. 1997)).

In the case at hand, Appellees sought specific performance through their cause of action for breach of contract as well as pursuant to Section 27. The essential factual allegations on which Appellees' claims are based are as follows: (1) on December 10, 1993, Mildred entered into a contract with Dotson entitled "Lease with Options to Purchase; (2) pursuant to the terms of the contract, Dotson was given a twenty year option to purchase the property with all lease payments serving as credits toward the final purchase price; and (3) Dotson accepted the option to purchase the remaining tracts. Appellants' counterclaims are based on the following essential factual allegations: (1) Dotson engaged in a deceptive campaign with the goal of developing a false friendship with Mildred, the sole purpose of which was to gain her trust so that he could take undue advantage of her and obtain from her unconscionable terms and conditions for the lease and eventual conveyance of her real property; (2) Dotson manipulated Mildred in a manner to make her even more dependent on him thereby creating in Mildred an implicit trust of Dotson by the time she signed the contract; (3) Dotson and Mildred entered into the contract at issue; and (4) Dotson failed to perform his obligations under the contract by using the property for purposes other than agricultural ones.

Although the contract at issue contains multiple provisions—one being a lease agreement and

the other being an option to purchase land—there is no indication that the parties intended the provisions to be distinct transactions. The facts underlying both parties' claims are closely related. Appellants' counterclaims focus on the events leading to formation of the contract at issue while Appellees' claims stem from the language of the contract itself. Since we construe a "transaction" as flexible and comprehending a series of many occurrences logically related to one another, *see* *Cmty. State Bank*, 38 S.W.3d at 258, we conclude that Appellants' counterclaims arise out of the same transaction as do Appellees' claims. Therefore, we hold that by virtue of Section 16.069, Appellees were unable to demonstrate as a matter of law that Appellant's claims are barred by limitations. To the extent that Appellants' sole issue relates to Appellees' affirmative defense of limitations, it is sustained.

**RATIFICATION**

As part of their sole issue, Appellants further argue that the trial court erred in granting summary judgment in Appellees' favor because Appellees failed to demonstrate as a matter of law that Appellants' counterclaims were barred by the affirmative defense of ratification. Acts done in affirmance of a contract can amount to a waiver of fraudulent inducement only where they are done with full knowledge of the fraud and of all material facts and with the intention, clearly manifested, of abiding by the contract and waiving all right to recover for the deception. *See* *Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 742 (Tex. App.–Waco 2002, no pet.). Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver. *Id.* Express ratification of a fraudulently induced contract is not necessary, but any act based on a recognition of the contract as subsisting or any conduct inconsistent with avoidance of the contract has the effect of waiving the right to rescind the contract on the basis of fraud. *See* *Featherlax Corp. v. Chandler*, 412 S.W.2d 783, 788 (Tex. Civ. App.–Corpus Christi 1966, writ ref'd n.r.e.). As a result of ratification, the defrauded party waives the defense of fraud and is bound by the terms of the contract. *See* *Bennett v. Mason*, 572 S.W.2d 756, 759 (Tex. Civ. App.–Waco 1978, writ ref'd n.r.e.).

The question is largely one of intent. *See* *Cottey,* 72 S.W.3d at 742. That is, there must be evidence of an intent to relinquish or conduct that warrants an inference of relinquishment. *See*

6

*Andrews v. Powell*, 242 S.W.2d 656, 661 (Tex. Civ. App.–Texarkana 1951, no writ). No general rule can fit all cases, for each transaction must be resolved on its own facts. *See Indem. Ins. Co. of N. Am. v. Sterling*, 51 S.W.2d 788, 791 (Tex. Civ. App.–Beaumont 1932, no writ). Moreover, there can be no waiver of fraud without full knowledge of all the circumstances. *See Peters v. Lerew*, 139 S.W.2d 321, 327 (Tex. Civ. App.–Galveston 1940, writ dism'd, judgm't cor.); *Most Worshipful Grand Lodge Free & Accepted Masons of Tex. v. Hayes,* 82 S.W.2d 411, 414 (Tex. Civ. App.–Dallas 1935, no writ) (the doctrine of waiver or ratification is founded upon the fact of knowledge of all the facts).

Appellants argue that Appellees presented no evidence that Mildred (1) received benefits under the contract, (2) conducted herself in a manner indicating that she "recognized the [contract] as subsisting and binding[,]" (3) affirmed the contract, (4) continued to comply with the contract after she became aware of the alleged fraud, or (5) intended to give validity to the acts of Appellees. Having reviewed the summary judgment record, we disagree.

In his deposition, Wells testified that in late 1993 or early 1994, he and his mother, Phillips, consulted a lawyer as to the meaning of the contract Mildred had entered into with Dotson. They later expressed to Mildred their concern that the contract was not in her best interest and informed her of what the lawyer had told them. Wells further testified that Mildred knew as early as 1994 that there was something wrong with the contract and that Dotson had taken advantage of her. However, according to Wells, even with such knowledge, Mildred declined to take any action to have the contract set aside.

Likewise, Stewart testified in her deposition that, in 1995, she explained to Mildred that Mildred had no rights under the contract. Stewart further testified that Mildred understood her and, after telling Stewart she would pray about it, later stated, "I gave my word, and I can't go back on my word." Stewart stated that it was her impression that Mildred intended to keep her word to Dotson pursuant to the terms of the agreement.

Phillips testified at her deposition that she was present when Mildred signed the contract with Dotson. Phillips further testified that, at that time, she told Dotson's lawyer in Mildred's presence that she thought Dotson was taking Mildred "to the cleaners" because Dotson was trying to make a false friendship with Mildred to induce her to sign the contract and, as a result, Mildred loved

7

Dotson like a son. Phillips stated that she and her son, Wells, later attempted to explain to Mildred the effect of the contract. Phillips further stated that subsequently, Mildred told her, "If he takes me to the cleaners, he'll just have to take me . . . I've prayed about it[.] I've studied on it . . . I can't go back on my word[.] I can't welch on a deal." In summary, Phillips testified that she had clearly warned Mildred, Mildred carefully considered and understood the warning, and determined that she would not do anything to undo what she felt was her obligation. Phillips confirmed that in 2003, Mildred signed documents conveying property to Dotson pursuant to the contract. Phillips further confirmed that Mildred received money from Dotson annually pursuant to their agreement and deposited that money in the bank.

Sterling testified at her deposition that she spoke with Mildred in 1995 concerning the contract Mildred had executed with Dotson. Sterling further testified that she made it clear to Mildred that Dotson had taken advantage of her and that Mildred understood this. Sterling stated that Mildred tearfully said to her, "I just can't believe Buddy took advantage of me like that." Sterling further stated that Mildred felt that her word was the law and that she could not go back on it. Sterling testified that Mildred did nothing to disturb her agreement with Dotson from 1995 until the date of her death in 2005. Sterling further testified that Mildred told her that, after she entered into the contract, Phillips and Wells had met with a lawyer who looked at the contract. Sterling stated that Mildred told her that Phillips and Wells then met with her and showed her a letter from the lawyer in an attempt to try to convince her how unfair her agreement with Dotson was to her. Sterling again confirmed that Mildred chose to not attempt to have the agreement set aside.

In our review of the summary judgment record, we have not encountered any evidence that contradicts the aforementioned deposition testimony given by Wells, Stewart, Phillips, and Sterling respectively. The testimony each offered is largely consistent and demonstrates that Mildred acted in affirmance of her contract with Dotson with full knowledge that he had taken advantage of her and treated her unfairly. Mildred continued to accept lease payments from Dotson, expressed to Appellees that in spite of Dotson's acts, she, bound by her word, intended to abide by the contract, and, in fact, transferred one of the tracts of land to Dotson in accordance with the contract. Therefore, we hold that the trial court did not err in granting summary judgment on Appellees' affirmative defense of ratification as it pertains to Appellants' fraud in the inducement claim.

8

Ratification is not an affirmative defense to any of Appellants' remaining counterclaims. Thus, to the extent the trial court granted summary judgment on those remaining counterclaims on the ground of ratification, it erred. To the extent that Appellants' sole issue relates to Appellees' affirmative defense of ratification and Appellants' fraud in the inducement claim, it is overruled. To the extent that Appellants' sole issue relates to Appellees' affirmative defense of ratification and Appellants' remaining counterclaims, it is sustained.

## STANDING

As part of their sole issue, Appellants also argue that Faye Dotson, who was not a party to the contract at issue, lacks standing. Because neither party briefed the issue further, we requested additional briefing on the issue. Appellants obliged; Appellees did not.

Standing is a component of subject matter jurisdiction and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). It is a constitutional prerequisite to maintaining a suit under both federal and Texas law. *Id.* at 444. Under Texas law, standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and "a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought." *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (quoting *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex. 1995)). In reviewing standing on appeal, we construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing. *See Tex. Air Control Bd.*, 852 S.W.2d at 446.

The general rule is that only the parties to a contract have the right to complain of a breach thereof; and if they are satisfied with the disposition that has been made of it and all claims under it, a third person has no right to insist that it has been broken. *Grinnell v. Munson*, 137 S.W.3d 706, 712 (Tex. App.–San Antonio 2004, no pet.); *see also Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 747 (Tex. App.–Dallas 1990, writ denied) (privity of contract is an essential element of recovery in contract actions). An exception to this rule is that a person who is not in privity to the written agreement may show that he is eligible to bring an action on the contract as a third party beneficiary. *Id.* There is a presumption against conferring third party beneficiary status on noncontracting parties. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007);

9

***MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.***, 995 S.W.2d 647, 652 (Tex. 1999). In deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls. ***Lomas***, 223 S.W.3d at 306. The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third party must be denied. ***Id.*** Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. ***Id.*** A third party may enforce a contract only when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit. ***Id.*** To qualify as one for whose benefit a contract was made, the third party must benefit more than incidentally; she must be either a donee or creditor beneficiary. ***MCI Telecomms. Corp.***, 995 S.W.2d at 651. A person is a donee beneficiary if the performance promised will come to her as a pure donation. ***Id.*** If performance will come to satisfy a duty or legally enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary. ***Id.***

In the instant case, Appellees' live pleadings make no mention of Faye Dotson other than a statement identifying her as a plaintiff. She is not a party to the contract at issue nor is there any language in the contract to indicate that the contracting parties intended her to be a third party beneficiary. As it pertains to Faye Dotson, the summary judgment evidence establishes little more than that, as of 2006, she and Dotson were married for twenty years and that she was present when the agreement was signed. Thus, at most, Faye has a presumptive community property interest in the option inasmuch as it is property Dotson acquired during their marriage. *See* TEX. FAM. CODE ANN. § 3.003 (Vernon 2006). Yet, the option, which Dotson acquired by contract in his name alone, is presumed to be his sole management community property. *See* TEX. FAM. CODE ANN. § 3.104 (Vernon 2006). As such, Faye Dotson lacks standing to bring suit on the option contract because Dotson has the sole authority to bring an action related to such sole management community property. *See **Blackman v. Bd. of Adjustment, City of Dallas***, No. 05-98-00953-CV, 2000 WL 1239981, at *3 (Tex. App.–Dallas Aug. 31, 2000, pet. denied) (not designated for publication) (wife's financial support interest in husband's personal earnings during marriage did not support standing to bring cause of action related to husband's employment). Thus, based on our review of the record, we conclude that there is no evidence to support that Faye Dotson had standing to sue for breach of contract. To the extent that Appellants' sole issue relates to Faye Dotson's standing, it is

sustained.

**CONCLUSION**

We have held that Faye Dotson lacks standing and ***dismiss for want of jurisdiction*** as to her. We ***reverse*** the trial court's summary judgment to the extent that it was based on Dotson's claim pursuant to Texas Probate Code, section 27 and ***render*** judgment that Dotson take nothing pursuant to his Section 27 claim.  Moreover, to the extent that the trial court's summary judgment was based on Dotson's affirmative defense of limitations, we ***reverse*** the trial court's summary judgment and ***remand*** for further consideration of the respective parties' remaining claims and/or counterclaims. Having overruled the remainder of Appellants' sole issue,  we ***affirm*** in all other respects the trial court's summary judgment as to Dotson.

    SAM GRIFFITH    
Justice

Opinion delivered July 9, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

11