**Opinion filed May 30, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00066-CV

_____

## IN RE FRANK RANDOLPH KELLY
## AND LACY PAIGE BROOKS

**Original Mandamus Proceeding**

### MEMORANDUM OPINION

Relator, Frank Randolph Kelly (Randy), is the former executor of the estate of Mikie Leslene Kelly. He is also the trustee of a testamentary trust that was created by Mikie. After Mikie died, Randy initiated a probate proceeding in the Ector County Court at Law. Sometime later, Real Party in Interest, Coby Todd Bausch (Todd), filed a petition against Randy in the probate matter, alleging that Randy had mishandled estate assets. Todd also sued Randy in the 244th District Court in Ector County, seeking to remove him as trustee and again alleging that he had mishandled estate assets.

In this original proceeding, Randy and Relator, Lacy Paige Brooks (Lacy), seek a writ of mandamus ordering the district court to vacate its order denying their motions to abate.[1]  We conditionally grant the petition and order the district court to abate Todd's claims therein, in deference to the probate proceeding pending in the Ector County Court at Law.

*Factual Background*

Mikie passed away on May 19, 2018.  Her will designated Randy as executor. Mikie's will divided her estate into two parts: a marital fund and a family fund.  The marital fund was distributed outright to Randy.  The family fund was placed in a trust.  Randy was named as trustee of the family trust.  The will provided that, in administering the trust, Randy should give preference to his own needs, followed by the needs of Mikie's descendants.

After Mikie's death, Randy initiated a probate proceeding in the Ector County Court at Law, where he applied for and qualified as the independent executor. Among the beneficiaries of the family trust are Todd and Lacy.  Todd is Mikie's son and Randy's stepson.  Lacy is Randy's daughter and Todd's stepsister.

In February 2023, Todd filed a petition against Randy and Lacy in the probate matter.  The probate petition alleged that Randy had converted multiple estate assets for his personal benefit, including several parcels of real property, rather than transferring the assets into the trust as directed by Mikie's will.  The petition sought to enjoin Randy from transferring or spending certain estate assets, asserting— among other things—claims for breach of fiduciary duty and conversion.  Todd also

---

[1]Lacy has filed a "Joinder of Petition for Writ of Mandamus" wherein she joins Randy's petition for mandamus and adopts by reference the petition, the appendix, and the mandamus record filed by Randy.

sought to enjoin Lacy from acting on behalf of the estate or the family trust and from speaking or acting on behalf of Randy.

After Todd filed his petition in the county court at law, Randy resigned as executor of the estate. However, there is no indication in the record that the county court at law has granted any of the injunctive relief that was requested by Todd.

In October 2023, Todd filed another lawsuit against Randy, this time in the 244th district court. Todd also named Lacy as a defendant in the district court action. In the district court lawsuit, Todd again alleged that Randy had converted multiple estate assets for his personal use. Likewise, Todd's district court lawsuit asserted claims for breach of fiduciary duty and conversion against Randy and sought to restrain him from transferring or distributing trust assets. The lawsuit also sought to restrain Lacy from acting on behalf of the trust or Randy.

Todd secured a temporary injunction against them from Respondent, the Honorable John W. Smith, the visiting judge assigned to preside over the proceedings in the district court.[2] Thereafter, Randy and Lacy filed motions requesting a transfer of venue of the district court lawsuit to the county court at law, where the probate proceeding was pending. Alternatively, each of their motions sought to abate the action in the district court, pending the resolution of Todd's suit in the probate proceeding.

The district court denied the motions that were filed by Randy and Lacy, and granted the temporary relief that was sought by Todd. Randy and Lacy have since filed an appeal from the orders granting temporary relief. In the meantime, in this

---

[2]The district court's docket sheet reflects that the Honorable Ben Woodward, the presiding judge of the Seventh Administrative Judicial Region, assigned the district court proceedings to Judge Smith.

matter, Randy and Lacy also seek a writ of mandamus ordering the district court to abate in deference to the probate proceeding.

*Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

When a trial court refuses to abate a proceeding based on the argument that another court has dominant jurisdiction, mandamus will issue on a showing of an abuse of discretion. *J.B. Hunt*, 492 S.W.3d at 299–300. "[A] relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a plea in abatement in a dominant-jurisdiction case." *Id.* Accordingly, in a mandamus proceeding involving a claim of dominant jurisdiction, a relator need not show an inadequate remedy by appeal. *See id.*

*Analysis*

As a general matter, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. *J.B. Hunt*, 492 S.W.3d at

4

294; *Comp-E-Ware Tech. Assocs., Inc. v. Mushkin, Inc.*, 629 S.W.3d 549, 554 (Tex. App.—Fort Worth 2021, pet. denied). "As a result, when two suits are inherently interrelated, 'a plea in abatement in the second action *must* be granted.'" *J.B. Hunt*, 492 S.W.3d at 294 (quoting *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex.1988)).

In assessing whether two matters are interrelated, courts are guided in part by the compulsory counterclaim rule. *See* TEX. R. CIV. P. 97(a); *see also J.B. Hunt*, 492 S.W.3d at 292; *In re Tex. Christian Univ.*, 571 S.W.3d 384, 389 (Tex. App.—Dallas 2019, no pet.); *Encore Enters., Inc. v. Borderplex Realty Tr.*, 583 S.W.3d 713, 721 (Tex. App.—El Paso 2019, no pet.).

> A counterclaim is compulsory if it meets the following six characteristics: (1) it is within the jurisdiction of the court; (2) it is not at the time of the filing of the answer the subject of a pending action; (3) the action is mature and owned by the defendant at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

*Encore Enters.*, 583 S.W.3d at 721–22. In this instance, Todd questions whether elements (1) and (4) are applicable.

A. *Jurisdiction*

Initially, we consider whether the claims that are asserted by Todd in the district court are within the jurisdiction of the county court at law. To do so, we must determine whether the county court at law's probate jurisdiction extends to the issues raised by Todd in the district court.

"Texas probate jurisdiction is, to say the least, somewhat complex." *In re Est. of Hallmark*, 629 S.W.3d 433, 437 (Tex. App.—Eastland 2020, no pet.) (quoting

5

*Palmer v. Coble Wall Tr. Co.*, 851 S.W.2d 178, 180 n.3 (Tex. 1992)). Probate proceedings must be filed and heard in a court that exercises original probate jurisdiction. TEX. EST. CODE ANN. § 32.001(a) (West 2020). In Ector County, where there is no statutory probate court, the County Courts at Law exercise original probate jurisdiction. TEX. GOV'T CODE ANN. § 25.0003(d) (West Supp. 2023); *see also Saari v. Key Energy Serv., Inc.*, No. 11-17-00012-CV, 2018 WL 2973338, at *2 (Tex. App.—Eastland June 7, 2018, pet. denied) (mem. op.) ("Ector County does not have a statutory probate court; therefore, the county court at law exercises original probate jurisdiction.").

When it exercises its original probate jurisdiction, the county court at law has jurisdiction over "all matters relat[ing] to the probate proceeding[s]" as specified in section 31.002 of the Estates Code. EST. § 32.001(a). Section 31.002(b), in turn, indicates that the jurisdiction of a probate court extends to "the *interpretation and administration of a testamentary trust* if the will creating the trust has been admitted to probate in the court." EST. § 31.002(b)(2) (emphasis added).

The parties clash over the meaning of "administration" in Section 31.002(b). Todd argues that the term "administration" does not include the removal of trustees. In support of this argument, he relies on the Texas Supreme Court's opinion in *Carroll v. Carroll*, 304 S.W.3d 366 (Tex. 2010). In that case, the court held that, because the district courts are vested with "original and exclusive jurisdiction over all proceedings concerning trusts, including proceedings to . . . appoint or remove a trustee," the district court could not transfer a case involving the removal of a trustee to a statutory county court. *Id.* at 367–68 (quoting TEX. PROP. CODE ANN. § 115.001(a) (West 2023)). However, as Todd concedes, the county court at law in *Carroll* had not probated the will that created the trust at issue, and it therefore could

6

not have exercised original probate jurisdiction. *See* EST. § 31.002(b)(2) (jurisdiction over testamentary trusts is created when "the will creating the trust has been admitted to probate" in the same court). As such, *Carroll* does not address the question of whether a county court at law can act to remove a trustee of a testamentary trust when it is sitting as a probate court under Section 31.002(b)(2).

We review questions of statutory interpretation de novo, as they are questions of law. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). In construing a statute, our objective is to "ascertain[] and giv[e] effect to the legislature's intent as expressed by the plain and common meaning of the statute's words." *Wichita Cnty. v. Bonnin*, 268 S.W.3d 811, 817 (Tex. App.—Fort Worth 2008, pet. denied); *see also* GOV'T § 312.005 (West 2013). "If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resorting to rules of construction or extrinsic aids.'" *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)).

Furthermore, words that are not statutorily defined bear their common, ordinary meaning unless (1) a more precise definition is apparent from the statutory context or (2) the plain meaning yields an absurd result. *City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 261 (Tex. 2018) (citing *Paxton v. City of Dallas*, 509 S.W.3d 247, 256 (Tex. 2017)). When an undefined statutory term has multiple common meanings, "it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme." *Id.* (quoting *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016)).

In this case, we are called on to ascertain the meaning of the term "administration," or the act of administering, which is defined as "to manage the

affairs of" or "to direct or superintend the execution, use, or conduct of." *Johnson v. Williams*, No. 02-19-00089-CV, 2019 WL 6334689, at *2 (Tex. App.—Fort Worth Nov. 27, 2019, pet. denied) (mem. op.) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 1567 (2002)). As such, a probate court's "administration" of a trust under Section 31.002(b) would include any action that directs or superintends the execution, use, or conduct of the testamentary trust. The removal of trustees is one of the ways that Texas courts are called on to "direct" and "conduct" a trust. *See* PROP. § 113.082.

We also note that Chapter 113 of the Property Code, which contains the requirements for the removal of trustees, is entitled "Administration." PROP. Ch. 113; *see also id.* § 112.001(3) (applying Property Code trust provisions to testamentary trusts); *Id.* § 113.082 (establishing grounds for removal of trustees). While this title does not inform the otherwise unambiguous meaning of the provisions that follow, it indicates a legislative desire that the "administration" of a trust includes the appointment and removal of trustees. *See* GOV'T § 311.024 ("The heading of a . . . chapter . . . does not limit or expand the meaning of a statute."); *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 75 (Tex. 2016) ("[T]hough a statutory heading does not limit or expand a statute's meaning, the heading can inform the inquiry into the Legislature's intent.") (footnote omitted).

Based on the common and ordinary meaning of the word "administration," as well as the use of the same term in the Property Code, we conclude that the meaning of "administration" in Section 31.002(b)(2) of the Estates Code unambiguously extends to the removal of trustees. However, even if we were to conclude that Section 31.002(b)(2) does not extend the county court at law's jurisdiction to the removal of trustees that are created under a testamentary trust, the jurisdiction of the

county court at law is not strictly limited to Section 31.002. Rather, when sitting as a probate court, the county court at law may also exercise "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." ESTATES § 32.001(b). This extension of the county court at law's jurisdiction to "pendant and ancillary" matters is derived from Section 5 of the former Probate Code, which was amended by the legislature on several occasions, and, in its latter version, provided a broad grant of jurisdictional authority. *See In re Est. of Treviño*, 195 S.W.3d 223, 229 (Tex. App.—San Antonio 2006, no pet.) (amendment to Probate Code "further clarified that 'pendant and ancillary' is a separate basis for jurisdiction unencumbered by [other] limitations to jurisdiction set forth in section 5A").

"Typically, probate courts exercise pendant or ancillary jurisdiction when a close relationship exists between the nonprobate claims and the matter pending in the probate court." *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Shell Cortez Pipeline Co. v. Shores*, 127 S.W.3d 286, 294 (Tex. App. —Fort Worth 2004, no pet.)). That is, probate courts will exercise pendant or ancillary jurisdiction when doing so "will aid in the efficient administration of a matter pending in the probate court." *Id.*

We conclude that, even if the removal of a trustee were a nonprobate matter for purposes of the county court at law's jurisdiction under Section 31.002, the county court at law would still have jurisdiction over the removal of Randy as trustee as a result of its pendant and ancillary jurisdiction under Section 32.001. Additionally, Todd's remaining claims, which involve the alleged mishandling of trust funds, clearly fall within the "administration" of the trust for purposes of Section 31.002(b)(2). Accordingly, the county court at law could properly exercise jurisdiction over all of the claims that Todd has asserted in the district court.

9

B. *"Same Transaction or Occurrence"*

Todd also questions whether the case in the district court arises out of the same "transaction or occurrence" as the probate matter. *See* TEX. R. CIV. P. 97(a). Texas courts apply a "logical relationship" test to determine whether two sets of claims arise out of the same transaction or occurrence. *Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 74 (Tex. App.—Eastland 2019, pet. denied); *Moore v. First Fin. Resol. Enters, Inc.*, 277 S.W.3d 510, 516 (Tex. App.—Dallas 2009, no pet.). "To be logically related, the essential facts on which the claims are based must be significantly and logically relevant to both claims." *Rahlek*, 587 S.W.3d at 74; *see also Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App.—Tyler 2008, no pet.). When applying the logical relationship test, the concept of a "transaction" may sometimes apply to a series of several occurrences that logically relate to one another. *See Rahlek*, 587 S.W.3d at 74; *Wells*, 261 S.W.3d at 281.

In the county court at law, Todd alleges that Randy "has siphoned Estate assets for his personal benefit in violation of the terms of the Family Trust created under the will." He further alleges that Randy was obligated "to move all the estate property into the Family Trust" and that he has failed to move certain real property into the trust. Additionally, Todd alleges that Randy delayed in transferring certain oil and gas royalty interests into the trust, depriving the trust of the benefit of those interests during the delay. Todd also claims that Randy is acting under the influence of Lacy and/or that Lacy is conspiring with Randy to convert estate assets that should be placed in the trust.

Similarly, in the district court, Todd alleges that Randy has converted assets for his own benefit that should have gone into the estate and that he has delayed in effectuating transfers into the trust. Todd also claims that Randy has provided Lacy

10

with a power of attorney, which she has used to convert estate assets. Finally, Todd's claims in the district court include an allegation that Lacy and Randy have conspired to act against the interests of the estate.

Each of these cases involve the same parties, the same estate administration, the same testamentary trust, and similar allegations regarding a conspiracy between Randy and Lacy. Additionally, each case involves allegations regarding the improper disposition of assets from the estate.

Todd points out that his requested relief in the district court includes the removal of Randy as trustee, and that no similar relief is requested in the county court at law. However, Todd's claims in the district court are not limited to a request for the removal of Randy as trustee. He also asserts causes of action against Randy for breach of fiduciary duty, conspiracy, and conversion. Todd asserts the same causes of action, based on similar factual allegations, in the county court at law. Furthermore, as a factual basis for his causes of action in the district court, Todd alleges that Randy has mishandled estate assets. Such factual allegations are similar to the claims already made in the county court at law.

The similarities between the allegations in each of these matters are too strong to ignore. As such, the trial court erred when it implicitly determined there was no logical relationship between the two matters by denying Randy's and Lacy's alternative pleas in abatement.

*Conclusion*

The county court at law court has jurisdiction over the appointment and removal of trustees under the testamentary trust. Furthermore, there is a clear, logical relationship between Todd's claims in the district court and his claims in the county court at law. Accordingly, we conclude that the trial court's denial of the

11

motions to abate was an abuse of discretion because the county court at law has dominant jurisdiction over Todd's claims.

*This Court's Ruling*

We conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate the portion of its February 1, 2024 order denying Randy's and Lacy's pleas in abatement and (2) enter an order abating the above-referenced matter. Mandamus will issue only if the trial court fails to act by June 19, 2024.



JOHN M. BAILEY
CHIEF JUSTICE


May 30, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.